1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  STACEY D. SCHESSER, State Bar No. 245735
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5774
     Fax:  (415) 703-5843
8    Email:  Stacey.Schesser@doj.ca.gov

9  Attorneys for Respondent Ben Curry

10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| 15 **ISIDRO F. DELUNA,** | C 07-2491 CRB |
| 16 Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 17 v. | |
| 18 **B. CURRY, WARDEN,** | |
| 19 Respondent. | Judge:   The Honorable Charles R. Breyer |

20

21                     **INTRODUCTION**

22      Isidro DeLuna, an inmate at the Correctional Training Facility, represents himself in this

23  habeas corpus action.  DeLuna alleges that the Board of Parole Hearings unconstitutionally found

24  him unsuitable for parole at a April 27, 2005 parole consideration hearing.

25      The standard of review under the Anti-Terrorism and Effective Death Penalty Act of 1996

26  (AEDPA) determines whether a federal court may grant habeas relief.  Because the state court's

27  denial of DeLuna's state habeas petition was not contrary to nor an unreasonable application of

28  United States Supreme Court law, and was not an unreasonable interpretation of the facts, this

1   Court cannot grant relief.  DeLuna received all the process the Constitution requires under

2   *Greenholtz v. Inmates of Nebraska Penal and Correction Complex*, 442 U.S. 1 (1979), the only

3   clearly established federal law with respect to state parole procedures.  Because there is no

4   Supreme Court precedent that broadens his due process rights, the state court decision must be

5   upheld.  Accordingly, Respondent respectfully requests that the Petition be denied.

6         The Court issued an Order to Show Cause why DeLuna's Petition should not be granted on

7   August 29, 2007.  Respondent Acting Warden Ben Curry[1/] answers as follows:

8

9                         **ANSWER TO ORDER TO SHOW CAUSE**

10        In response to the Petition for writ of habeas corpus filed in this Court on May 9, 2007,

11  Respondent hereby admits, denies, and alleges the following:

12        1.    DeLuna is lawfully in the custody of the California Department of Corrections and

13  Rehabilitation following his conviction for second-degree murder.  (Ex. 1, Abstract of

14  Judgment.)  He is currently serving an indeterminate sentence of fifteen years to life plus an

15  enhancement for firearm use.  (*Id*.)  DeLuna does not challenge his underlying conviction in the

16  current proceeding.

17        2.    Respondent affirmatively alleges that on April 27, 2005, DeLuna received a subsequent

18  parole consideration hearing.  (Ex. 2, Subsequent Parole Consideration Hearing Transcript.)

19  DeLuna was present and represented by counsel and a Spanish interpreter.  (*Id*. at 2.)  The Board

20  began the hearing by reviewing DeLuna's rights, including a timely notice of the hearing, the

21  right to review his Central File, the right to present relevant documents, the right to be heard by

22  an impartial Panel, and the right to receive a copy of the Board's written decision.  (*Id*. at 10-11.)

23  Via counsel, DeLuna affirmed that his rights were met and that he did not object to the Panel.

24  (*Id*. at 11.)

25  _____

26        1. A proper habeas respondent is the person having custody of the petitioner, such as the
    warden.  Rule 2(a), 28 U.S.C. § 2254.  Therefore, this Answer is filed on behalf of Respondent

27  Acting Warden Ben Curry.  However, because this Petition challenges a parole consideration
    hearing, the Board is used interchangeably with Respondent in this Answer and the supporting

28  Memorandum of Points and Authorities.

3.    Respondent alleges that the Board first began the hearing by reviewing the circumstances of the commitment offense. (Ex. 2 at 13.) The Board relied on the Summary of Crime taken from March 2005 Board Report to review the commitment offense. (Ex. 2 at 13-19; Ex. 3, Life Prisoner Evaluation Board Report.) On or about July 7, 1985, DeLuna had been drinking at a local bar with some friends. (Ex. 3 at 1.) The victim, Fernando Rentorio, was also at the bar, but DeLuna did not know him very well. (*Id.*) At one point, DeLuna became involved in a physical altercation with the victim, but soon after left the bar with his friends. (*Id.*)

DeLuna later returned to the parking lot of the bar with a rifle. (*Id.*) DeLuna drove up to the victim, who was standing in the parking lot and circled him in his car. (*Id.*) DeLuna fired shots at the victim, one shot hitting the victim in the shoulder and another in the face. (*Id.*) The victim, however, continued to walk around the lot, spitting blood and teeth fragments. (*Id.*) DeLuna followed the victim in his car and continued to fire shots, hitting a gas pump and then hitting the victim in the back. (*Id.*)

As DeLuna then tried to flee the area, he fired another shot in the direction of the bar and hit a parked pick-up truck, driven by a female who was uninvolved in the incident. (*Id.* at 2.)

When police went to DeLuna's house to question him, they asked DeLuna his name, to which he replied, "Fernando Hernandez." (*Id.*) DeLuna appeared impatient and attempted to leave on several occasions. (*Id.*) After a physical struggle, DeLuna was apprehended and taken into custody. (*Id*) He later admitted committing the crime and pled guilty. (*Id.*)

4.    While discussing the commitment offense with the Board, DeLuna had difficulty recalling any details because he stated that he was intoxicated on the night of the crime. (Ex. 2 at 16-17.) He admitted that he "didn't have the reaction or the capacity" to call the police. (*Id.* at 19.) In response to this, the Board noted the DeLuna was not that intoxicated because he had the ability to drive a car to his house, locate his rifle, load his rifle, return to the bar, shoot at the victim, and hit the victim with several shots. (*Id.* at 19-20.)

5.    Respondent alleges that the Board discussed DeLuna's criminal history and social upbringing. (Ex. 2 at 21-23.) DeLuna did not have any criminal history and came to this country as a legal alien employed as a field laborer. (*Id.* at 21.) He was married and had two children,

1   but later divorced and re-married. (*Id.* at 21-22.)

2       6.   The Board spoke with DeLuna about his alcohol and substance abuse. (Ex. 2 at 23.)

3   DeLuna began to use alcohol at age 17, drinking one or two beers a day and a six-pack on the

4   weekends. (*Id.*) He denied using drugs. (*Id.*) The Board noted that on the day of his

5   commitment offense, he consumed a very large quantity of alcohol. (*Id.*)

6       7.   With respect to his parole plans, DeLuna informed the Board that if released, he

7   planned to return to Mexico with his parents. (Ex. 2 at 24.) He had an offer of employment as a

8   farm worker in California, in addition to another offer of employment in Minnesota, where he

9   would reside with his sister. (*Id.* at 24-25.)

10      8.   The Board also reviewed letters of support for DeLuna's parole. (Ex. 2 at 26-32.)

11   Based on these letters, the Board found that DeLuna's family and support network resided in

12   Minnesota. (*Id.* at 32.) The Board determined that if paroled, DeLuna would want to return to

13   Mexico. (*Id.*) They noted that DeLuna had an active immigration hold. (*Id.* at 33.)

14      9.   The Board then reviewed DeLuna's post-conviction factors. They found that DeLuna

15   has not received his GED, nor a vocation, but had two certificates of achievement for landscape.

16   (Ex. 2 at 35-36.) The Board noted that DeLuna attended Alcoholics Anonymous (AA) and

17   completed the Impact Program, but since 2004 had attended limited AA courses because of a

18   medical issue. (*Id.*) DeLuna also completed a 44-week Personal Growth Seminar. (*Id.* at 36.)

19      10.  With respect to his disciplinary record, DeLuna received two minor reports, with the

20   most recent one occurring in April 25, 2004 for delaying lockup. (Ex. 2 at 37.)

21      11.  The Board reviewed DeLuna's psychological evaluation conducted in 2001. This

22   evaluation used a Spanish Interpreter. (Ex. 2 at 38; Ex. 4, Psychological Evaluation.) The

23   psychologist noted DeLuna's extensive alcohol abuse in the report, especially on the day of his

24   commitment offense. (Ex. 2 at 39.) The psychologist also noted that DeLuna had a more serious

25   problem with alcohol than he acknowledged, and recommended that DeLuna participate in AA if

26   denied parole. (*Id.* at 42.)

27      12.  Respondent alleges that DeLuna admitted to the Board that he was a drunk and an

28   alcoholic. (Ex. 2 at 40.)

1    13.   The Board then permitted the Santa Clara County District Attorney to speak with

2  DeLuna. (*Id.* at 43.) The District Attorney asked DeLuna about the day of his commitment

3  offense and learned that he had been drinking beer in the morning at work, after work when he

4  went home, while he was shopping at the flea market with a friend and his brother, and then

5  chose to go to the bar, where he continued drinking up to the commission of the murder. (*Id.* at

6  44- 46.) The District Attorney learned that DeLuna drove his car throughout the day and that

7  DeLuna kept a rifle and shotgun in his car. (*Id.* at 47, 50.)

8    14.   Respondent alleges that the District Attorney of Santa Clara County offered closing

9  arguments and opposed parole. (Ex. 2 at 61.) The District Attorney emphasized DeLuna's day-

10  long drinking episode and the impact of alcohol in fueling the crime. (*Id.* at 63, 67.) The District

11  Attorney disputed the portion of DeLuna's psychological report that stated that he was a low

12  level of risk given the extent of the drinking involved in the commitment offense. The District

13  Attorney also expressed concern as to whether DeLuna has adequately addressed his alcohol

14  problem and questioned whether Deluna would be able to avoid the temptation of alcohol if

15  released or whether he could re-offend if somebody got into an altercation with him. (*Id.* at 69-

16  70.) The District Attorney asked that DeLuna be found not suitable by the Board and issued a

17  multi-year denial. (*Id.* at 72.)

18    15.   Respondent alleges that DeLuna's attorney offered a closing argument in favor of a

19  finding of suitability. (Ex. 2 at 72-74.) In addition, DeLuna had the opportunity to personally

20  address the Board at the close of the hearing but chose to affirm his attorney's statements. (*Id.* at

21  75.)

22    16.   Respondent alleges that the Board found DeLuna unsuitable for parole after reviewing

23  all the information in the record and received from the public. (Ex. 2 at 76.) In finding DeLuna

24  unsuitable, the Board relied on several factors.

25    First, the Board found that the commitment offense "was carried out in a violent and brutal

26  manner." (*Id.*) The Board emphasized that there were multiple victims, one of whom was killed,

27  and that the offense was carried out in a manner which demonstrates a disregard for human life

28  and for public safety. (*Id.*) The Board noted that DeLuna had been drinking all day on the day of

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *De Luna v. Curry*
                                                                             C 07-2491 CRB

1  the offense, drove a vehicle to his residence, changed into another vehicle that contained two

2  weapons – a shotgun and a rifle – and then returned to the bar after drinking more at home. (*Id.*

3  at 76-77.) The Board emphasized that when DeLuna returned to the bar, he confronted the

4  victim and killed him by shooting him in the shoulder, face, and back as the victim tried to flee.

5  (*Id.* at 77.) As DeLuna tried to leave the scene, he also fired his weapon at a vehicle containing a

6  female with children, who were uninvolved in the incident. (*Id.*)

7      The Board found that the inmate had no prior criminal history and his programming was

8  limited due to a medical condition. (*Id.*) Consequently, DeLuna has not been able to obtain a

9  marketable skill or participate in self-help. (*Id.*)

10      The Board commended DeLuna for not receiving any serious disciplinary violations, but

11  noted that he had received a minor report as recent as February 2004. (*Id.* at 77-78.)

12      Although the Board noted that the evaluating psychologist found that DeLuna had a more

13  serious problem with alcohol than he was willing to acknowledge, the Board stressed that

14  DeLuna clearly admitted to the Panel that he believes he is a drunk and alcoholic. (*Id.* at 79-80.)

15      The Board noted that DeLuna's parole plans were not in California, but in Minnesota, even

16  though he also planned to return to Mexico. (*Id.* at 80.)

17      The Board also considered the District Attorney's opposition to parole suitability. (*Id.*)

18      17.  Respondent alleges that the Board considered DeLuna's positive factors and

19  commended him for his involvement in self-help programming, being involved in English as a

20  Second Language (ESL), and obtaining two vocational certificates. (*Id.*) However, the negative

21  factors outweighed the positive, and accordingly, the Board denied parole. (*Id.* at 81.)

22      18.  In finding DeLuna unsuitable, the Board determined that DeLuna required "additional

23  time in order to fully understand and deal with the consequences of his act." (*Id.* at 81.) The

24  Board recommended that DeLuna remain disciplinary-free, get involved in self-help if his

25  medical condition permits him to, and cooperate with clinicians in completing a clinical

26  evaluation, especially in discussing his insight into his alcohol abuse. (*Id.*) The Board requested

27  a new psychological evaluation in light of DeLuna's admission of being an alcoholic. (*Id.*)

28      19.  Respondent alleges that the Board properly issued DeLuna a one-year denial of parole.

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*De Luna v. Curry*
C 07-2491 CRB

1   (*Id.* at 81.)

2      20.   Respondent admits that DeLuna filed a petition in the California Supreme Court

3   generally alleging the same causes of action that he alleges here.[2] (Ex. 5, Petition for Writ of

4   Habeas Corpus.)  Respondent further admits that the California Supreme Court properly denied

5   DeLuna's petition for writ of habeas corpus on September 20, 2006, citing *In re Dannenberg*, 34

6   Cal. 4th 1061 (2005) and *In re Rosenkrantz*, 29 Cal. 4th 616 (2002).  (Ex. 6, Supreme Court

7   Order Denying Habeas Corpus.)  Respondent further admits that DeLuna thus exhausted his state

8   court remedies in regard to the claims alleged here stemming from his 2005 parole consideration

9   hearing.  However, Respondent denies that DeLuna exhausted his claims to the extent that they

10  are more broadly interpreted to encompass any systematic issues beyond this particular review of

11  parole denial.

12     21.   Respondent denies that DeLuna presents a federal claim for review when he alleges

13  that the Board's one-year parole denial is arbitrary and an abuse of discretion.  Respondent

14  affirmatively alleges that the Board has the authority to issue a one-year denial for DeLuna – a

15  convicted murderer – under California Penal Code section 3041.5(b)(2)(B).

16     22.   Respondent denies that DeLuna has a federally protected liberty interest in parole; thus,

17  DeLuna fails to assert a basis for federal jurisdiction.  *Greenholtz,* 442 U.S. at 12 (no

18  constitutional liberty interest in parole unless statutory language creates expectancy); *Sandin v.*

19  *Connor*, 515 U.S. 472, 484 (1995) (no federal liberty in parole because remaining in prison to

20  serve a contemplated sentence does not create an atypical or significant hardship compared with

21  ordinary prison life); and *In re Dannenberg*, 34 Cal. 4th at 1087 (California's parole scheme is a

22  two-step process that does not impose a mandatory duty to grant life inmates parole before a

23  finding of suitability).  *Contra Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir.

24  2006) (holding that California state inmates have a federally protected liberty interest in a parole

25  date).

26  ───────────────────────────────

27      2. Respondent did not include any of the exhibits attached to any of Petitioner's state court
    petition because they would be repetitious and voluminous.  Should the Court request the exhibits,
28  Respondent will of course provide them.

23.  Respondent denies that the state court's denial of habeas corpus relief was contrary to or involved an unreasonable application of clearly established United States Supreme Court law, or that the denial was based on an unreasonable interpretation of facts in light of the evidence presented.  The only clearly established federal law interpreting state parole procedures is found in *Greenholtz*, in which the Supreme Court stated that an opportunity to be heard and a statement for reasons denying parole satisfies due process.  *Id.* at 16.  Respondent affirmatively alleges that DeLuna had an opportunity to present his case to the Board, and that the Board provided him with a detailed explanation for its parole denial.  Therefore, DeLuna received all process due under *Greenholtz*, and thus fails to make a case for federal relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).

24.  Respondent denies that the some-evidence standard is clearly established law in the context of parole.  To the extent the Court disagrees, Respondent alleges that the Board considered all relevant and reliable evidence before it, and that its decision is supported by some evidence.  *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).

25.  Respondent affirmatively alleges that the Board properly considered the gravity of DeLuna's commitment offense as required by California Penal Code section 3041(b).

26.  Respondent denies that the Board violated due process by continuing to use unchanging factors in denying DeLuna parole.  *Sass*, 461 F.3d at 1129 (undermining the dicta in *Biggs* and finding that "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could proceed").  Respondent alleges that even if the Board solely relied on the circumstances of the commitment offense, DeLuna has failed to present clearly established United States Supreme Court law prohibiting the Board from doing so.

27.  Respondent also alleges that DeLuna has failed to present clearly established United States Supreme Court law that mandates that the Board must consider whether his current behavior indicates that he is an unreasonable risk of danger to the public.  Respondent alleges that this is the improper standard for determining whether a federal due process violation occurred.  Moreover, Respondent alleges that the Board may continue to rely on the circumstances of the commitment offense in considering DeLuna unsuitability for parole.

28.   Respondent denies that DeLuna presents a federal claim for review when he uses state case law and statutes to argue that the Board violated his due process rights in finding unsuitable. A state prisoner is entitled to habeas corpus relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3).  State law questions are not cognizable in federal habeas corpus proceedings.  *See, e.g., Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197-98 (9th Cir. 1983).

29.   Respondent denies that DeLuna would be entitled to release even if this Court decides to grant DeLuna habeas relief.  Rather, DeLuna's remedy is limited to a new Board hearing that comports with due process.  *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 984-85 (9th Cir. 2002) (noting that the parole board must exercise the discretion in determining whether or not an inmate is suitable for parole); *Rosenkrantz*, 29 Cal. 4th at 658 (noting that the proper remedy for a Board decision lacking some evidence is a new hearing comporting with due process).

30.   Respondent admits that DeLuna's claim is timely under 28 U.S.C. § 2244(d)(1), except as to his plea agreement claim, and that the Petition is not barred by non-retroactivity.

31.   Respondent denies violating or altering the terms of DeLuna's plea agreement. Respondent affirmatively alleges that DeLuna is serving an indeterminate life sentence and has not provided any evidence to show otherwise.

32.   Respondent denies that DeLuna has served the maximum term of his life sentence.

33.   Respondent denies that the Board characterized DeLuna's commitment offense as more serious than the crime of which he was convicted.  Respondent affirmatively alleges that under California law, the Board may consider all circumstances of the crime.  *Rosenkrantz*, 29 Cal. 4th at 679.

34.   Respondent denies that DeLuna presents a federal claim for review when he alleges that the Board violated his due process rights and liberty interest in parole by finding him unsuitable for parole after he served the sentence specified in the applicable state-law sentencing matrix.  Under *Dannenberg*, the Board properly found DeLuna unsuitable for parole without relying on the matrices for second degree murder because some evidence relating to the heinous

1    nature of the murder he committed resulted in his still being an unreasonable risk to public

2    safety. 34 Cal. 4th at 1098. In other words, even if DeLuna presented a federal claim, it is

3    without merit because the Board need not consider any relevant state law sentencing matrix until

4    DeLuna is found suitable for parole. *Id.*

5        35.    Respondent denies that an evidentiary hearing is necessary in this matter.

6        36.    Respondent affirmatively alleges that DeLuna fails to state or establish any grounds for

7    habeas corpus relief.

8        37.    Except as expressly admitted above, Respondent denies, generally and specifically,

9    each and every allegation in the Petition, and specifically denies that DeLuna's administrative,

10   statutory or constitutional rights have been violated in any way.

11       Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of

12   habeas corpus, and dismiss these proceedings.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *De Luna v. Curry*
                                                                             C 07-2491 CRB

### MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

### I.

**THE PETITION SHOULD BE DENIED BECAUSE DELUNA FAILS TO STATE A CLAIM FOR FEDERAL HABEAS RELIEF UNDER AEDPA.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) restrains judicial authority to grant relief to a state prisoner. *See* 28 U.S.C. § 2254(d). Under AEDPA, a federal court may not grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits unless the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

As a threshold matter, the Court must decide what, if any, "clearly established Federal law" applies. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). In making this determination, the Court may look only to the holdings of the United States Supreme Court governing at the time of the state court's adjudication. *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000)). The only United States Supreme Court holding that addresses the process due in the state parole context is found in *Greenholtz v. Inmates of Neb. Penal Complex*, 442 U.S. 1, 8, (1979).

The state court decision denying DeLuna's claim for habeas relief is neither contrary to or an unreasonable application of federal law, nor based on an unreasonable determination of the facts in light of the evidence presented. First, DeLuna received all the process required under *Greenholtz*, the only clearly established federal law specifically addressing the due process rights of inmates in a parole suitability decision. Second, the state court decision does not involve an unreasonable interpretation of the evidence; rather, some evidence supports the state court holding. Thus, DeLuna fails to establish a violation of AEDPA standards, and the state court decision denying habeas relief must stand.

Respondent recognizes that when, as here, the state court has not addressed the

---

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*De Luna v. Curry*
C 07-2491 CRB

1  constitutional issues in a reasoned decision, federal courts may engage in an independent review.

2  Independent review of the record, however, "is not de novo review of the constitutional issue, but

3  rather, the only method by which [the court] can determine whether a silent state court decision is

4  objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (citations

5  omitted).

6         **A.**    **The State Court's Decision Upholding the Board's Parole Denial Was Not**

7                **Contrary to or an Unreasonable Application of Clearly Established Federal Law.**

8      A state court decision is contrary to established federal law if "the state court applies a rule

9  that contradicts the governing law set forth in [United States Supreme Court] cases," or "the state

10  court confronts a set of facts that are materially indistinguishable from a decision of [the United

11  States Supreme] Court and nevertheless arrives at a result different from [the Court's]

12  precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citations and internal quotation marks

13  omitted). Similarly, the state court decision is an unreasonable application of clearly established

14  law "if the state court identifies the correct governing legal principle from [the United States

15  Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's

16  case." *Id.* at 75. It is not enough that the state court applied the law erroneously or incorrectly;

17  rather, the court must have made an objectively unreasonable application. *Id.* at 75-76.

18      AEDPA affords a "highly deferential standard for evaluating state-court rulings, which

19  demands that state court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537

20  U.S. 19, 24 (2002) (quotations omitted). When reviewing state court habeas decisions, the

21  Supreme Court has noted that state courts need not even cite to, or even be aware of, the

22  governing Supreme Court case law. *Early v. Packer*, 537 U.S. 3, 8, (2002). So long as neither

23  the reasoning nor the result of the state court decision contradicts clearly established federal law,

24  a federal court should not grant habeas relief. *Id.* With respect to parole cases, then, the federal

25  court does not have to review state court decisions to ensure that they properly applied

26  *Greenholtz*; so long as the state court's denial does not contradict the due process guarantees set

27  forth in *Greenholtz*, the federal court must let the state court decision stand.

28      In *Greenholtz*, the Court held that due process is satisfied where state parole procedures

1  afford: (1) an opportunity to be heard; and (2) a statement of reasons for the denial of parole.

2  *Greenholtz*, 442 U.S. at 16.  Petitioner's due process claim fails because he received both of

3  these protections at his 2005 parole consideration hearing.

4      First, the record reflects that DeLuna had a chance to fully present his case before the Board.

5  He discussed his commitment offense with the Board, as well as his educational and vocational

6  activity while incarcerated. (Ex. 2 at 13-19, 35-36.)  DeLuna also answered questions and

7  offered comments regarding his psychological examinations.  (*Id.* at 38-40.)  He spoke with the

8  Board regarding his parole plans and presented letters of support.  (*Id.* at 24-32.)   Finally,

9  DeLuna had the opportunity to deliver a closing argument, but chose to affirm the argument

10  made by his counsel for why he should be found suitable for parole.  (*Id.* at 72-74.)

11      Second, DeLuna received a thorough explanation as to why the Board denied parole.  (*Id.* at

12  76-82.)  Accordingly, under *Greenholtz*, DeLuna received all process due.  Thus, the state court's

13  denial of habeas was not contrary to clearly established federal law and the Petition should be

14  denied pursuant to AEDPA.

15          **1.    As Determined by the United States Supreme Court in *Carey v. Musladin*,**
              **DeLuna Cannot Broaden Due Process Protections Beyond *Greenholtz*.**
16

17      Notably, DeLuna does not assert that the Board failed to comply with the due process

18  standards as outlined by the Supreme Court in *Greenholtz*.  Rather, he relies on the "some-

19  evidence" test to claim that the Board deprived him of due process when relying upon his

20  commitment offense and unchanging factors to deny parole. (Pet. at 6-13.)  To the extent that

21  DeLuna's claims raise issues of federal law, however, he seeks due process protections beyond

22  those clearly established by the United States Supreme Court.

23      As discussed in the Supreme Court's recent holding in *Carey v. Musladin*, it is improper to

24  import a federal test to determine the proper outcome in federal habeas relief when that test is not

25  clearly established in the specific factual context. 127 S. Ct. at 653, 654. At issue in *Musladin*

26  was whether spectator conduct was subject to the test for inherent prejudice that governed state-

27  sponsored conduct. *Id.* at 651-52. A convicted murderer filed a federal habeas petition after a

28  state appeals court held that wearing of buttons by the victim's family members that featured the

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                                    *De Luna v. Curry*
                                                                                              C 07-2491 CRB

1  victim's photograph during the trial was not inherently or actually prejudicial. *Id.* at 651-52.

2  The Ninth Circuit granted habeas relief after concluding that the Supreme Court had clearly

3  established the applicable test for inherent prejudice.  However, the Supreme Court disagreed,

4  stating "although the Court articulated the test for inherent prejudice that applies to state conduct

5  [], we have never applied that test to spectators' conduct." *Id.* at 653-54.  Thus, *Musladin* stands

6  for the principle that courts may not analogize factually distinguishable cases.

7      Recently, in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), the United

8  States Supreme Court again factually distinguished two of its cases that the Ninth Circuit cited in

9  holding that the state court unreasonably applied clearly established federal law when finding

10  ineffective assistance of counsel claims frivolous.  In *Landrigan*, a criminal defendant questioned

11  by the judge told the court that he did not want mitigating evidence presented (his attorney

12  advised otherwise). *Id.* at 1937-38.  The United States Supreme Court reasoned that the two

13  cases relied on by the Ninth Circuit were not clearly established federal law by factually

14  distinguishing them. *Id.* at 1942.  The Court noted that one case involved an attorney's failure to

15  provide mitigating evidence and the other case concerned a defendant who refused to help

16  develop mitigating evidence. *Id.*

17      Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases.  For

18  instance, in *Foote v. Del Papa*, 492 F.3d 1026 (9th Cir. 2007), the Ninth Circuit affirmed the

19  district court's denial of a petition alleging ineffective assistance of appellate counsel based on an

20  alleged conflict of interest because no Supreme Court case has held that such an irreconcilable

21  conflict violates the Sixth Amendment. *Id.* at 1028.  Similarly, in *Nguyen v. Garcia*, 477 F.3d

22  716 (9th Cir. 2007), the Ninth Circuit upheld the state court's decision finding that *Wainwright v.*

23  *Greenfield*, 474 U.S. 284 (1986) did not apply to a state court competency hearing on the ground

24  that the Supreme Court had not held yet applied *Wainwright* in this manner. *Id.* at 718, 727.

25      AEDPA is not an avenue for broadening federal law beyond that which has been clearly

26  established by the Supreme Court.  Just as courts may not analogize state-sponsored conduct to

27  spectator conduct for purposes of AEDPA review, it is improper to analogize *Hill's* some-

28  evidence test to parole consideration cases.  *Hill* dealt with the due process protections for a

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*De Luna v. Curry*
C 07-2491 CRB

1   prison disciplinary proceeding, which is an adversarial process that is retrospective and involves

2   fact-finding.  At issue before the court are the due process protections for a parole hearing, which

3   is procedurally distinct from a disciplinary hearing because it is prospective and invokes the

4   Board's judgment and prediction of future behavior.  Therefore, because *Greenholtz* is the *only*

5   United States Supreme Court authority describing the process due at a parole consideration

6   hearing when an inmate has a federal liberty interest in parole, the *Greenholtz* test, not the some-

7   evidence standard, should apply in this proceeding.

**B.   To The Extent This Court Finds That the Some-Evidence Test Is the Proper
Standard, DeLuna Is Still Not Entitled to Habeas Relief Because the State
Court's Decision Was a Reasonable Application of *Hill*.**

10  Assuming that the "minimally stringent" some-evidence standard applies, the state court's

11  decision denying DeLuna's petition was not contrary to or an unreasonable application of United

12  States Supreme Court law.  The record contains some evidence to support the Board's decision

13  denying him parole for two years.  *See Hill*, 472 U.S. at 455-56 (applying some-evidence

14  standard to prison disciplinary hearing).

15  The some-evidence test is a deferential standard, guarding against arbitrary deprivations of

16  due process.  *Id.* at 455.  This test requires no more than "a modicum of evidence."  *Id.*  The

17  reviewing court may not independently assess the credibility of witnesses or independently weigh

18  the evidence.  *Id.*  Due process is satisfied so long as "there is any evidence in the record that

19  could support the conclusion reached by the disciplinary board."  *Id.* at 455-56.  Accordingly,

20  both the reasonable-determination standard of AEDPA and the some-evidence standard of *Hill*

21  are very minimal standards.

22  In the absence of a reasoned state court decision, a review of the record is the only means of

23  deciding whether the state court's decision was objectively unreasonable.  *Himes*, 336 F.3d at

24  853.  As aforementioned, the court conducts an independent review of the record.  *Sass*, 461 F.3d

25  at 1126 (conducting independent review of the record because state court did not explain

26  reasoning when it found only that petition "failed to set forth sufficient facts to establish a prima

27  facie case for relief").

28  An objective review of the record here reveals that the California Supreme Court's decision

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                    *De Luna v. Curry*
                                                                             C 07-2491 CRB

1 upholding the Board's denial of parole was supported by some evidence.  First, the Board found

2 that the commitment offense was carried out in a violent, brutal manner, resulting in multiple

3 victims where one was killed.  (Ex. 2 at 76.)  The Board noted that DeLuna had been drinking all

4 day long when he left the bar, only to return and shoot the victim in the face and even in the back

5 as he was trying to leave.  (*Id.*)  The Board also expressed concern that DeLuna fired his weapon

6 at a vehicle containing a woman with children who were uninvolved in the incident.  (*Id.* at 77.)

7 The Board found that alcohol played a major role in the commitment offense and that DeLuna

8 only recently admitted to having a serious problem with alcohol, the first time being at the parole

9 hearing when he stated that he was a drunk and an alcoholic.  (*Id.* at 78.)  The Board noted that

10 this recent awareness contrasted with the most recent psychological report stating that DeLuna

11 had a more serious problem with alcohol than he was acknowledging, and consequently, the

12 Board felt this issue should be explored in a new psychological evaluation.  (*Id.* at 78-79, 81.)

13 The Board also expressed concern that DeLuna's parole plans were not in California, but in

14 Minnesota, even though DeLuna plans to return to Mexico.  (*Id.* at 80.)  Ultimately, the Board

15 concluded that DeLuna required "additional time in order to fully understand and deal with the

16 consequences of his act" and thus issued a one-year denial.  (*Id.* at 81.)

17    Because some evidence supports the Board's denial, including the circumstances of the

18 commitment offense and DeLuna's recent admission of a serious alcohol problem, the state

19 court's denial of DeLuna's habeas petition challenging his 2005 parole consideration hearing was

20 not objectively unreasonable.  DeLuna's substantive due process rights were thus satisfied and

21 this petition should be denied.

22    **1.    The Board May Rely on Unchanging Factors to Deny DeLuna Parole.**

23    DeLuna argues that his due process rights were violated by the Board's continued use of

24 unchanging factors in denying him parole.  This argument fails for a number of reasons.  First,

25 there is no clearly established Supreme Court law that prevents the Board from considering the

26 unchanging factors in Petitioner's case.  Rather, all that due process requires is stated in

27 *Greenholtz*.  DeLuna also presents no Supreme Court law that establishes that due process

28 requires the Board not to consider unchanging factors or guarantees greater due process than

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                              *De Luna v. Curry*
C 07-2491 CRB

1  provided in *Greenholtz*.

2      Petitioner's reliance on Ninth Circuit precedent does not compel a different result. In *Biggs*

3  *v. Terhune*, the Ninth Circuit stated that the Board's continued reliance on an unchanging factor

4  to deny parole "could result in a due process violation." 334 F.3d 910, 917 (9th Cir. 2003).

5  However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor

6  necessarily violates due process, only that it possibly *could*. The court went on to praise Biggs

7  for being "a model inmate," and found that the record was "replete with the gains Biggs has

8  made," including a master's degree in business administration. *Id.* at 912. Nonetheless, the court

9  denied habeas relief because the Board's decision to deny parole – which relied solely on the

10  commitment offense – was supported by some evidence. *Id.* at 916-17.

11      Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly

12  established federal law sufficient to overturn a state court decision under AEDPA. *Crater v.*

13  *Galaza*, 491 F.3d 1119, 1126 (9th Cir. 2007) (citing *Casey v. Moore*, 386 F.3d 896 (9th Cir.

14  2004). In *Casey*, the Ninth Circuit noted that circuit decisions are not controlling precedents

15  under the standard required by AEDPA and cited to this proposition as discussed by the Supreme

16  Court in *Musladin*. *Casey*, 386 F.3d at 907. Additionally, the Ninth Circuit recently emphasized

17  that *Biggs* does not contain mandatory language, and that "[u]nder AEDPA, it is not our function

18  to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. The

19  Ninth Circuit also rejected the argument that the Board's reliance on "immutable behavioral

20  evidence" to deny parole violated federal due process.[3/] Thus, *Biggs* does not preclude the Board

21  from using circumstances of the commitment offense to deny parole, nor may its dicta be used to

22  overturn a valid state court decision.

23      Additionally, DeLuna presents no Supreme Court law that supports broadening his due

24

25      3. This Court has also recognized that the Board may properly rely on static factors to deny
26  parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary
    factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are
27  genuine. California's parole scheme does not offend due process by allowing the [Board] to predict
    that an inmate presents a present danger based on a crime he committed many years ago." *Hill v.*
28  *Kane*, 2006 U.S. Dist. LEXIS 79023 at *8 (Oct. 26, 2006) (N.D. Cal.) (citations omitted).

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                         *De Luna v. Curry*
                                                                                  C 07-2491 CRB

1  process rights and requiring the Board to consider whether he is a current threat to public safety.

2  Per *Musladin*, there is no clearly established federal law requiring a parole board to provide any

3  level of evidence, let alone evidence of whether a prisoner poses a current threat to public safety.

4  In no case has the Supreme Court determined that a parole decision is reviewed to determine

5  whether the inmate poses a current risk to public safety. Accordingly, federal habeas relief may

6  not be granted on this ground.

7  **2.    The Board Did Not Improperly Extend DeLuna's Sentence, but
Rather Properly Considered All Relevant Evidence Under the State**

8  **Statute.**

9  DeLuna also argues that he is entitled to a uniform parole date on par with terms imposed

10  for the lesser-included offense of second-degree murder. (Pet. at 26.) DeLuna further alleges

11  that as a result of the Board's failure to consider the uniformity of sentences, the Board has

12  increased his crime of second-degree murder to first-degree murder without fair notice. (Pet. at

13  43.)

14  DeLuna's claim is without merit. Regardless, of the terms in the matrices, DeLuna has not

15  yet served the maximum term for his sentence, which is life imprisonment. DeLuna fails to

16  present evidence that he was informed by the prosecutor or the Board that his term was anything

17  less than a life term. To the contrary, his Petition reflects the fact that he knows he was

18  sentenced to a life term. (Pet. at 26.) Therefore, he cannot contend that he was without notice of

19  the length of his term. Although he continues to remain eligible for parole, his current

20  incarceration for second-degree murder is lawful under the terms of his life-maximum sentence.

21  Finally, the Supreme Court has upheld the indeterminate sentencing scheme. *Blakely v.*

22  *Washington*, 542 U.S. 296, 308 (2004). In its reasoning, the Court noted that "[i]n a system that

23  says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40

24  years in jail." *Id.* at 309. In California, then, where second-degree murder is punished with an

25  indeterminate life sentence, every murderer knows that he risks life in prison. Thus, the Board

26  did not unconstitutionally alter DeLuna's sentence in denying him parole at this time.

27  ///

28  ///

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                                    *De Luna v. Curry*
C 07-2491 CRB

## II.

**THE STATE COURT'S DENIAL OF DELUNA'S CHALLENGE TO HIS PLEA AGREEMENT WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR WAS IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

Petitioner claims that his federal due process and equal protection rights were violated because the Board failed to honor his plea agreement. As this argument involves a question of state law, it is not a proper basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In addition, DeLuna's claim is untimely. He began serving his life term in 1986 and had his initial parole consideration hearing in 1994. (Pet. at 1.) He has provided no explanation for waiting until now to challenge his plea agreement. 28 U.S.C. § 2244(d)(1)(D) (one-year statute of limitations for AEDPA claims); *Calderon v. United States District Court (Beeler)*, 128 F.3d 1283, 1286 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc) *In re Robbins* (1988) 18 Cal.4th 770, 778 (claims in a habeas petition must be timely filed); *In re Clark* (1993) 5 Cal.4th 750, 765 (a petitioner, even one appearing pro per, must explain and justify any significant delay in seeking habeas corpus relief).

Moreover, the state court's rejection of DeLuna's plea argument claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts. In *Santobello v. New York*, 404 U.S. 257, the Supreme Court held that a criminal defendant has a due process right to enforce the terms of his plea agreement. However, in his state court petition, DeLuna admits that he plead to a sentence of fifteen-years-to-life. (Ex. 5 at 21.) Thus, the state court's denial of this claim was based on an reasonable interpretation of the facts presented, given that DeLuna conceded that he is serving a life term pursuant to the terms of his plea agreement, and has failed to present evidence to the contrary. See *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987) (construction of state court plea agreement is governed by state contract law, and federal court should not disturb a reasonable state court interpretation)

1    Even if DeLuna's argument has merit, DeLuna fails to meet his burden of submitting a

2  copy of the plea hearing transcript for this Court to properly review along with his petition.  He

3  cannot show that California court misinterpreted his plea agreement or provide evidence that he

4  should be released from prison upon serving his minimum term.  DeLuna also does not allege

5  that the sentencing court or prosecutor indicated at his plea hearing that he would be paroled

6  either by a specific date or if he satisfied certain conditions.  In the absence of any evidence,

7  DeLuna's subjective belief that he would be paroled as soon as he became eligible for parole is

8  insufficient to demonstrate a violation of his plea agreement.  *See Brown v. Poole*, 337 F.3d 1155

9  (9th Cir. 2003).  Therefore, the court should deny this claim.

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.                          *De Luna v. Curry*
                                                                                   C 07-2491 CRB

| | |
|---|---|
| 1 | **CONCLUSION** |
| 2 | Under AEDPA, to establish entitlement to reversal of a state court parole denial, DeLuna |
| 3 | must prove that the state court decision denying habeas relief is contrary to, or an unreasonable |
| 4 | interpretation of, clearly established federal law.  Petitioner has failed to meet this burden and the |
| 5 | record confirms that he received all the process due at his parole consideration hearing under the |
| 6 | clearly established federal law articulated in *Greenholtz*.  In addition, some evidence supports the |
| 7 | Board's parole denial.  Finally, DeLuna's plea agreement claim is both untimely and without |
| 8 | merit.  For these reasons, Respondent respectfully requests that the Petition be denied. |
| 9 | |
| 10 | Dated:  October 26, 2007 |
| 11 | Respectfully submitted, |
| 12 | EDMUND G. BROWN JR.<br>Attorney General of the State of California |
| 13 | DANE R. GILLETTE<br>Chief Assistant Attorney General |
| 14 | |
| 15 | JULIE L. GARLAND<br>Senior Assistant Attorney General |
| 16 | ANYA M. BINSACCA<br>Supervising Deputy Attorney General |
| 17 | |
| 18 | *Stacey D. Schesser* |
| 19 | |
| 20 | STACEY D. SCHESSER<br>Deputy Attorney General<br>Attorneys for Respondent |
| 21 | |
| 22 | 20109751.wpd |
| 23 | SF2007200705 |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Answer to Pet. for Writ of Habeas Corpus; Mem. of P. & A.

*De Luna v. Curry*
C 07-2491 CRB

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **De Luna v. Curry**

No.:    **C 07-2491 CRB**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>October 26, 2007,</u> I served the attached

### ANSWER TO ORDER TO SHOW CAUSE;
### MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Isidro Fernandez DeLuna**
**D16017**
**Correctional Training Facility**
**FW-119**
**P.O. Box 689**
**Soledad, CA 93960**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 26, 2007, at San Francisco, California.

| L. Santos | ᘒ. Santos |
| --- | --- |
| Declarant | Signature |

20111262.wpd