# EXHIBIT 4

MENTAL HEALTH EVALUATION
FOR THE BOARD OF PRISON TERMS
OCTOBER 2001 CALENDAR
CMC-East

PSYCHOSOCIAL ASSESSMENT

**Identifying Information:** Mr. Isidoro Deluna is a 46 year-old, married, Mexican National first termer committed from Santa Clara County. He is presently serving a 17 year to life sentence for Second Degree Murder with Firearm. The index offense occurred on 7/7/85, and Mr. Deluna entered into CDC at Vacaville on 10/22/85. Currently, he has a USINS Hold dating back to 10/28/85. He arrived at CMC on 5/30/01 for medical treatment and return to Soledad. Mr. Deluna was previously evaluated for the Board of Prison Terms by Dr. William Gamard, Clinical Psychologist at Soledad, on 12/3/00.

Informed consent, including the limits of confidentiality was provided. Mr. Deluna appeared to understand both the nature and purpose of the evaluation, and he agreed to participate in the interview. Due to his limited comprehension and speaking ability in English, he requested a Spanish interpreter. The interview was conducted on 7/27/01 with the assistance of a Spanish interpreter. The total interview time was approximately 2 1/2 hours.

**Developmental History:** Mr. Deluna reported that he was born in Fresnillo, in the Zacatecas area of Mexico. He was raised in an intact family, and he was the second of 14 children. His developmental history appears to be unremarkable. He had no recollection of any birth difficulties or developmental difficulties during early childhood. He also denied having any serious adjustment difficulties during his childhood. There does not appear to be any childhood history of sexual or physical abuse. He recalled falling off a horse and suffering a mild concussion sometime during his childhood.

There did not appear to be any serious adjustment difficulties during his adolescence. He reported that he had no involvement with the law enforcement system while residing in Mexico.

**Education:** In the present interview, Mr. Deluna reported that he completed the fourth grade while living in Mexico. He stated that he did not have any academic or behavioral problems while in school. On a scale of one to ten, he reported that received an overall grade of nine.

Although Mr. Deluna has a lengthy incarceration, he has limited skills in English. He reported that he attended ESL classes "off and on" during his incarceration, but has had difficulty learning English. He has a tendency to associate with other Spanish-speaking inmates and he apparently has not provided himself with very many opportunities for speaking English and reading in English. His TABE test from 6/4/01 reflected a 2.5 grade placement level.

**Family History:** As mentioned earlier, Mr. Deluna was raised in an intact family with 13 siblings. He reported that his parents, Pablo and Soledad, are both in their 70'S and in good health, living on the family ranch in Mexico. He reported that he comes from a close-knit family, and he maintains contact with his family members by mail. Although most of his family continues to reside in Mexico, he has several brothers living in Minnesota. He denied any family history of alcohol problems, drug use, legal difficulties, mental disorder, or significant medical problems.

Mr. Deluna described his childhood in favorable terms, stating that his family ranch was productive and provided most of the needs for his family. He recalled doing hard work on the ranch beginning in early childhood. At the age of 17, he came to reside in California.

| DELUNA, ISIDORO | D-16017 | CMC-East | 8/2/01 | ER/rs |
|---|---|---|---|---|

MENTAL HEALTH EVALUATION
FOR THE BOARD OF PRISON TERMS – Page 2

**Psychosexual Development:** Mr. Deluna identified himself as exclusively heterosexual. He reported that his sexual experience is confined to committed relationships, and he has had no interest in non-normative sexual behaviors or fantasies. There does not appear to be any history of sexual aggression.

**Marital/Relationship History:** Mr. Deluna was married to his first wife, Rosa, at the age of 25. He reported that this marriage lasted from 1979 through 1985 and ended as a result of his incarceration in prison. Following his divorce, later in 1985, he married Juana Perez. He described Juana as a childhood friend who grew up in his area. Currently, she is residing in Sonoma and she has a 19 year-old son. His current contact with Juana is by phone and by mail. He was unable to identify any serious problems in their relationship, but he expressed that Juana is anxious for him to be released from prison.

**Military History:** Mr. Deluna reported that at the age of 16, he participated in basic training in the Mexican Army. There is no record of active service.

**Employment/Income History:** It appears that Mr. Deluna has extensive experience as a farm laborer. He has done field work, driven a tractor, been a foreman for other farm workers, and he worked on irrigation systems. He has also worked as a crop inspector.

**Substance Abuse History:** Mr. Deluna reported that he first started using alcohol at about the age of 17. He denied any use of illicit drugs. Initially, he informed the examiner that he consumed approximately one or two beers every day, and perhaps a six pack on the weekends. However, as the interview progressed, it became apparent that his use of alcohol was likely much more extensive. It appears that on the day of the index offense, he consumed a very large quantity of alcohol. Currently, Mr. Deluna denies having a problem with alcohol.

**Mental Health History:** Mr. Deluna does not appear to have a mental health history, either in the community or in prison. He denied any problems with depression or suicidal concerns. There does not appear to be any history for head injury, seizure disorder or other neurological conditions.

As mentioned earlier, Mr. Deluna was transferred to CMC for medical treatment. According to a report by Dr. David Bonneheim dated 7/9/01, he had surgery for the repair of a recurrent left inguinal hernia. It appears that Mr. Deluna has been recovering satisfactorily. He is currently taking Motrin for residual pain and stiffness.

**Plans If Granted Release:** Mr. Deluna will be deported to Mexico if he is granted a parole date. He informed the examiner that he and his wife intend to live together in Mexico with his family on their ranch. He reported that he has one brother and several uncles living with both his parents, who are currently operating the ranch. He reported that on the ranch they raise corn, beans and cattle for both milk and meat. He expressed that he has no intention of returning to the United States. Currently, his prognosis for community living seems favorable.

### CLINICAL ASSESSMENT

**Current Mental Status/Treatment Needs:** Mr. Deluna arrived for the interview promptly, and he was neatly groomed and dressed. There were no abnormalities in his appearance, presentation, or behavior. His demeanor was polite and cooperative. He was alert and well-oriented in the three spheres. His speech was heavily accented, but he was able to communicate effectively with the assistance of an

MENTAL HEALTH EVALUATION
FOR THE BOARD OF PRISON TERMS – Page 3

interpreter. There were no signs of disturbance in either his mood or thinking process. Memory and concentration seem to be fully intact. He denied any thoughts or intentions of harm to self or others.

**Diagnostic Impressions:**
  Axis I:    303.9    Alcohol Dependence, In Full Remission in a Controlled Setting
           V71.01   Adult Antisocial Behavior
  Axis II:   799.9    Deferred
  Axis III:           Recent surgery on hernia
  Axis IV:            Incarceration
  Axis V:    Global Assessment of Functioning (GAF) = 73

There do not seem to be any signs or symptoms of a mental disorder, and Mr. Deluna does not appear to be in need of mental health services.

**Criminal History:** The index offense is Mr. Deluna's only conviction. At the time of the offense, it appears that Mr. Deluna was a hard-working individual, without a criminal orientation.

According to his record, Mr. Deluna shot and killed an adult male victim at Rosita's Restaurant in Morgan Hill. Witnesses who were interviewed at the scene of the crime reported that there had been an argument at Rosita's between Mr. Deluna, the victim and his friends. Mr. Deluna reported that at the time of the offense, he was with one of his brothers and a friend. Allegedly, the argument ended and Mr. Deluna left the bar with his brother and friend. Allegedly the victim and his friends also left Rosita's. Later, Mr. Deluna returned driving a white car and he encountered the victim. Allegedly, Mr. Deluna and another passenger were observed in the car holding rifles and they started shooting at the victim. The victim was seen falling and bleeding from the shoulder. Allegedly, he got up walked around to the other side of his car and began yelling at Mr. Deluna "go ahead and kill me!". Another shot was fired striking the victim in the face, and the victim continued to walk around his car spitting blood and fragments of teeth. The victim then walked across the parking lot toward a stack of wooden boxes. Allegedly, Mr. Deluna tracked the victim in his car and fired another shot which struck a gas pump. The victim continued to walk along the wooden boxes calling for his brother, Jesus. As the victim was running between the boxes he was shot in the back and he later collapsed on the porch of Rosita's. The record indicates that as Mr. Deluna was fleeing from the area, another shot was fired in the direction of the bar and hit a pick up truck. Shots were allegedly fired at an oncoming car driven by a woman who was with her daughter and apparently had no connection with the offense. Shortly afterward, Mr. Deluna was located and arrested at his residence.

In the present interview, Mr. Deluna acknowledge full responsibility for shooting and killing the victim. Mr. Deluna had previously reported that he had limited recollection of the offense since he was heavily inebriated when the crime occurred. In the present interview, he estimated that he had consumed one 40 ounce bottle of beer, another six pack of tall beers, and three pitchers of beer at a local flea market. He continued drinking while at Rosita's. He reported that he started singing loudly to music that was playing on the juke box, when one of the victim's friends came to his table and asked him if "he had a problem." Mr. Deluna responded, "No," and then ordered four beers for the four individuals sitting at the other table. He expressed that when only two of the four individuals accepted the beer, "I knew there might be trouble." He reported that he, his brother and friend decided to leave the restaurant but encountered the victim's friend outside the restaurant. Mr. Deluna reported that at first the victim's

MENTAL HEALTH EVALUATION
FOR THE BOARD OF PRISON TERMS – Page 4

friend challenged him to a fight, but after several minutes of discussion they were able to resolve their differences and were about to come to an agreement, shaking hands. He reported that the victim, then came out of the restaurant, and started to hit him. Mr. Deluna claimed that as the victim was hitting him, he was trying to fend off the blows. Mr. Deluna alleged that the victim started cursing at him and then stated, "You'd better leave or I'm going to kill you." Mr. Deluna then got into his truck, drove home, and became "very upset and angry...I lost all reasoning." Mr. Deluna reported that he had a rifle in his car, and he returned to Rosita's. He denied having any intention of killing the victim. Mr. Deluna claims that when he saw the victim in the parking lot, the victim started moving quickly toward his vehicle. Mr. Deluna stated that he then pulled out his rifle, and started shooting at the victim, thinking that he was going for a firearm. Mr. Deluna acknowledged that he never saw the victim with a firearm. When questioned about why he continued to shoot the victim, who was no longer posing a threat to him, his only response was "I was feeling scared." He expressed remorse for the offense.

**Risk for Violence:** Risk for future violence in the community was estimated using three psychological instruments. The current research supports an empirically-based risk assessment as being the most reliable and valid procedure for assessing risk for violence. It should be noted that since Mr. Deluna is from a different cultural background, these instruments have questionable validity.

The three psychological instruments were the Hare scale (PCL-R), the History Clinical Risk 20 (HCR-20) and the Violence Risk Appraisal Guide (VRAG). Collectively, these three instruments assessed static risk factors, dynamic risk factors, and actuarial factors, associated with future risk for violence. On all three measures, Mr. Deluna scored well within the low range of severity. However, as mentioned above, these results need to be interpreted cautiously, since these instruments have questionable validity for individuals from different cultures.

**Conclusion:** Overall, Mr. Deluna appears to have a low level of risk for future violence in the community. The index offense seems to be an isolated incident, related to intense situational factors and the disinhibiting effect of alcohol intoxication. However, it should be noted that Mr. Deluna appears to have had a more serious problem with alcohol than he is acknowledging. His ability to maintain behavioral control is indicated by the fact that he has not received any CDC 115's disciplinary reports while incarcerated in prison. If Mr. Deluna is to remain in prison, it is recommended that he continue to remain disciplinary-free, that he improve his English skills, and that he participate in AA.

_Erich Rueschenberg, PhD._                                         8-30-01

Erich Rueschenberg, Ph.D.                                          Date
Clinical Psychologist

T: 8/7/01