# EXHIBIT 5

Name  Isidro De Luna

Address  P.O. Box 689-FW-119

Soledad, Ca. 93960

CDC or ID Number  D-16017

**SUPREME COURT**
**F I L E D**

DEC 2 3 2005

Frederick K. Ohlrich Clerk

DEPUTY

RECEIVED DEC 2 3 2005

CLERK SUPREME COURT

**ORIGINAL**

STATE OF CALIFORNIA SUPREME COURT

_____
(Court)

---

Isidro DeLuna

Petitioner

vs.

A. Kane, warden

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. **S139852**

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

| | |
|---|---|
| ☐ A conviction | ☒ Parole |
| ☐ A sentence | ☐ Credits |
| ☐ Jail or prison conditions | ☐ Prison discipline |
| ☐ Other (specify): | PETITIONER HAS BEEN HELD IN CUSTODY UNCONSTITUTIONALLY |

1. Your name:  Isidro DeLuna

2. Where are you incarcerated?  Correctional Training Facility. Located in Soledad, California

3. Why are you in custody?   ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Second Degree Murder with the use of firearm

   b. Penal or other code sections:  Penal Code §§ 187, 190 (a), 12022.5

   c. Name and location of sentencing or committing court:  SANTA CLARA COUNTY SUPERIOR COURT.

   d. Case number:  101994

   e. Date convicted or committed:  August 29, 1985

   f. Date sentenced:  October 11, 1985

   g. Length of sentence:  15-years to life and 2-years for the use of the firearm

   h. When do you expect to be released?  No release date has been set yet.

   i. Were you represented by counsel in the trial court?   ☒ Yes.   ☐ No.   If yes, state the attorney's name and address:

   Nazario A. Gonzales

   840 Guadalupe Pky, San Jose, Ca. 95110-1766

4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty   ☒ Guilty   ☐ Nolo Contendere   ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

   ☐ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6.  GROUNDS FOR RELIEF

**Ground 1:**  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.  For additional grounds, make copies of page four and number the additional grounds in order.)*

SEE THE GROUNDS, SUPPORTING FACTS AND AUTHORITIES ATTACHED HERETO.

a.  Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

7. **Ground 2** or **Ground** _____ *(if applicable):*

_____

SEE THE GROUNDS, SUPPORTING FACTS AND AUTHORITIES ATTACHED HERETO.

_____

_____

a. Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment?    ☐ Yes.    ☒ No.    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

_____

b. Result: _____    c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised:   (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal?    ☐ Yes.    ☐ No.   If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?    ☐ Yes.    ☐ No.    If yes, give the following information:

a. Result: _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised:   (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

N/A

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

No administrative review is required. See Exhibit "A" on page 1, and

Exhibit "G" on page 12.

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available?    ☐ Yes.    ☐ No.

*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: __Santa Clara County Superior Court__

    (2) Nature of proceeding (for example, "habeas corpus petition"): __HABEAS CORPUS PETITION__

    (3) Issues raised: (a) __No evidence support the findings of the Board on Parole suitability.__

        (b) __The Government has not jurisdiction to increase the penalty of 2nd degree murder.__

    (4) Result (Attach order or explain why unavailable): __Petition granted. See a copy of the decision at Exhibit "A".__

    (5) Date of decision: __Jan. 20, 2004.__

  b. (1) Name of court: __The Government appealed the Superior Court's decision. See In re DeLuna,__

    (2) Nature of proceeding: __24 Cal. Rptr.3d 643 (Cal. App. 6 Dist 2005).__

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court: __Petitioner sought relief in the Monterey County Superior Court and in the Court of Appeals__

__6th Dist however, he was not provide with the relief he sought (Release from cusody).__

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: December 20, 2005

                         *Isidro deLuna*
                         (SIGNATURE OF PETITIONER)

TABLE OF CONTENTS                                                    PAGE

GROUND  ONE

UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY
INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS          3
CLAUSE TO THE UNITED STATES CONSTITUTION AND HE POSSESS PROTECTION
FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.


GROUND TWO

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES
CONSTITUTIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE            8
ON PAROLE UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE WAS CONVICTED
AND THIS COURT SHALL REVIEW PETITIONER'S PETITION UNDER THE LAW THAT
WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.


GROUND THREE

THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER
UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE    13
TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS FOERTEENTH AMENDMENT.


GROUND FOUR

THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT
PETITIONER ENTERED WITH THE PROSECUTOR AND HAS INCREASED PETITIONER'S          21
PUNISHMENT OF SECOND DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER.


GROUND FIVE

DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER
UNDER PENAL CODE SECTION 189, BUT WAS CHARGED WITH SECOND DEGREE MURDER        26
UNDER PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN
THE EXECUTIVE BRANCH OF GIVERNMENT HAVE JURISDICTION TO INCREASE THE
PUNISHMENT OF PETITIONER'S SECOND DEGREE MURDER CONVICTION TO A
PUNISHMENT OF FIRST DEGREE MURDER CONVICTION.

TABLE OF CONTENTS                                    page

## GROUND SIX

WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT
MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY                30
ESTABLISHED LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF
THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

## GROUND SEVEN

THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY THAT
IT TURNED THE ISL INTO A VAGUE AND DISCRIMINATORY LAW IN VIOLATION OF THE       37
ADA AND THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTI-
TUTIONS.

1  Isidro DeLuna D-16017
2  P.O.Box 689-FW-119
   Soledad, Ca. 93960
3

4

5

6                    STATE OF CALIFORNIA SUPREME COURT

7

8  _____
9  Isidro Deluna            )
        Petitioner          )         PETITION FOR WRIT OF HABEAS CORPUS
10                          )
                            )
11        vs.               )
                            )
12  A. Kane, Warden         )
        Respondent          )
13  _____)

14

15              STATEMENT OF THE CASE

16   On August 29, 1985, petitioner pleaded guilty to second degree murder and to the
17  use of the firearm. See Exhibit "B" pages 2, 6.

18   On October 11, 1985 petitioner was sentenced to 15-years to life plus two years
19  for the use of a firearm. See Exhibit "B" on page 2.

20   On August 23, 1986 petitioner started serving his 15-years to life term.
21  The Minimum Eligible Parole Release Date was on August 17, 1996. See Exhibit "G"
22  on pages 1-2.

23   On October 3, 1994 the Board of Prison Terms (BPT or Board) held petitioner's
24  initial parole consideration hearing. Since then a series of Parole Suitability
25  Hearings have been held without finding him suitable for a parole release date.

26

27

                              1

1    On March 27, 2002 a Parole Suitability Hearing was held. Petitioner sought

2  relief from this hearing. The Santa Clara  County Superior Court granted petitioner's

3  petition. See the decision at Exhibit "A".

4    The Government appealed the decision of the California Superior Court. See the

5  Decision of the California Court of Appeals 6th Dist. In re DeLuna 24 Cal.3d 643

6  (2005). The Court of Appeals affirmed in part the decision of the Superior Court

7  and remanded petitioner's petition to the Superior Court to grant petitioner's

8  petition because there was not evidence to support the findings of the Board.

9    Another Parole Suitability Hearing was held on April 17, 2005 where Parole

10  Release Date was denied on the commitment offense circumstance only. See

11  Exhibit "G" on pages 76-82.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                          GROUND   ONE

2

3    UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY
     INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
4
     CLAUSE TO THE UNITED STATES CONSTITUTION AND HE FURTHER POSSESS
5    PROTECTION FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.

6

7    **First.**  The California Supreme Court held that prisoners possess a protected

8    liberty interest in connection with parole decisions rendered by the Board, that

9    it would be anomalous to conclude that they possess no comparable interest when

10   such decisions are reviewed by the Governor, where such review must be based upon

11   the same factors considered by the Board. That under California law, this liberty

12   interest underlying a Governor's parole review decisions is protected by the Due

13   Process of law. In re Rosenkrantz, 29 Cal. 4th 616, 660-661, 664, 128 Cal. Rptr.2d

14   104, 143-144, 146 (Cal. 2002).

15     In Vitek v. Jones, 445 U.S. 480, 488-489, 100 S. Ct. 1254, 1261 (1980) the Court

16   held, "Once a State has granted prisoners a liberty interest, we held that due

17   process protection are necessary "to insure that the State-created right is not

18   arbitrarily aborgated." See also Wolffv. McDonnell, 418 U.S. 539, 557, 94 S. Ct.

19   2963, 2975, 41 L.Ed.2d 935 (1974); Meachum v. Fano, 427 U.S. 215, 226, 96 S. Ct.

20   2532, 2539 (1976); Dent v. West Virginia, 129 U.S. 114, 123, 9 S.Ct. 231, 233,

21   32 L.Ed. 623 (1889).

22

23     Therefore, under this approach petitioner possess a protected liberty interest

24   conferred  to him by the State of California on parole suitability decisions and

25   it is protected by the Due Process Clause to the United States Constitution.

26

27

28

                                        3

1    SECOND.  Petitioner possess protected liberty interest based on the nature of

2    the interest he has been deprived.

3    In Sandin v. Conner, 515 U.S. 472, 480-484, 115 S.Ct. 2293, 2299-2300, fn. 5,

4    132 L. Ed.2d 418 (1995) the Court held that the protected liberty interest inquiry

5    shall not be focused on the language of the regulation but on the nature of the

6    deprivation.  See also Board of Regents of State Colleges v. Roth, 408 U.S. 564,

7    570-571,  92 S. Ct. 2701, 2705-2706 (1972); Meachum v. Fano, supra, 427 U.S. 215,

8    224, 96 S. Ct. 2532, 2538.

9    In Hewitt v. Helms, 459 U.S. 460, 470, 103 S. CT. 864, 870 (1983) the Court

10   found protected liberty interest in an administrative segregation issue even when

11   the Court held that, "The deprivations imposed in the course of the daily opera-

12   tions of an institution are likely to be **minor** when compared to the release from

13   custody at issue in parole decisions and good time credits."

14   In Board of Regents of State Colleges v. Roth, supra, 408 U.S. at 571, 92 S. Ct.

15   at 2706 the Court held that, "Liberty" and "Property" are broad and majestic terms.

16   That they are among the "_great constitutional concepts.

17   Therefore, on the nature of the deprivation to be released from custody in

18   parole decisions petitioner possess protected liberty interest.

19   In Sandin v. Oconner, supra, 515 U.S. at 480-484, 115 S. Ct. at 2299-2300, fn. 5

20   the Court overruled Hewitt v. Helms, supra, 459 U.S. 460, 103 S. Ct. 864 on the

21   issue that protected liberty interest inquiry shall not be focused on the language

22   of the regulation.

23   Contrary to the clearly established law of the United States Supreme Court a

24   United States District Court in Sass v. Cal. Bd. of Prison Terms, 376 F. Supp. 2d

25   975 (E.D. Cal. 2005) held that we (prisoners) don't have protected liberty interest

26   on parole suitability decisions protected by the Due Process Claue to the United

27   States Constitution.

28

4

1    In Sass the Court contrary to the clearly established law by the United

2    States Supreme Court focused on the mandatory language of the statute rather

3    than on the nature of the deprivation.

4    But lets assume for purpose of argument that the inquiry shall be focused on

5    the mandatory language of the statute, the decision in Sass is still contrary to

6    the United States Supreme Court's claerly established law.

7    The inquiry on the language of the statute not only shall be focused on the

8    mandatory language, but also on the conditions imposed to the inmates. See

9    Board of Pardons v. Allen (1987) 482 U.S. 369, 372-373, 107 S. Ct. 2415, 2417-

10   2418, 2429, fn. 9; Greenholtz v. Inmates of Nebraska Penal & Corr., 442 U.S. 1,

11   12, 99 S.Ct. 2100, 2106 (1979).

12   In California an inmate is not entitle to be released on parole unless he meet

13   the special conditions of parole. In re Rosenkrantz, 29 Cal.4th 616, 656, 128 Cal.

14   Rptr.2d 104, 139; Title 15 of CCR Sec. 2401, 2402, 2403.

15   In Sass the Court didn't consider the mandatory language of the regulations,

16   it didn't consider the conditions an inmate must meet before he be released on

17   parole. The Court only focused on the mandatory language of Penal Code  3041.

18   Therefore, the decision of the Sass Court either under the rule of the nature of

19   the deprivation or under the rule of the mandatory language is unreasonable and

20   contrary to the clearly established law by the United States Supreme Court.

21   This Court only needs to read Board of Pardons v. Allen, supra, 482 U.S. 369;

22   and Greenholtz v. Inmates of Nebraska Pen. & Corr., supra, 442 U.S. 1 and compare

23   the statutes on Montana and nebraska with the statute of California to conclude

24   that petitioner possess protected liberty interest because the statutes in the

25   three states are indistinguishable.

26   In Greenholtz and Board of Pardons v. Allen the Court made its own independent

27   interpretation of the State Statutes.

28

1   Therefore, the law requires the Federal Court to make its own interpretation

2   of Penal Code 3041 independent from the interpretation of the State Court. Williams

3   v. Taylor, 529 U.S. 362, 378-379, 384, 389, 402, 411, 120 S. Ct. 1495, 1505, 1508,

4   1511, 1517, 1522 (2000).

5       Petitioner submit to this Court that he possess protected liberty interest in

6   Parole Suitability decisions protected by the Due Process Clause to the United

7   States Constitution.

8

9       **THIRD.**    When the State misapplied its own law it creates a protected

10  liberty interest reviewable in habeas corpus petition. Hicks v. Oklahoma, (1980)

11  447 U.S. 343, 346, 100 S. CT. 2227, 2229, 65 L.Ed.2d 175; Ballard v. Estelle,

12  937 F.2d 453, 546  (9th Cir. 1991).

13      For the reasons state in this petition the State of California has misapplied

14  its own law. It misapllied its own law when it construed Penal Code  3041, and

15  it has misapplied its own law on parole suitability decisions. See the grounds

16  raised in this petition.

17      **FOUR.**    Petitioner possess protected liberty interest because he has been

18  punished in excess of the time authorized by the statutory law for the crime he

19  was convicted.  Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct. at 2229;

20  Whalen v. United States, 445 U.S. 684, 63 L. Ed. 2d 715, 100 S. Ct. 1432, fn. 4

21  (1980).

22      The UNited States Supreme Court requires lines between the sentences when the

23  crime is divided into degrees. Solem v. Helm, 77 L.Ed.2d 637, 652-653, (1983).

24      In California the lines are the matrices to set the base term. Title 15 of

25  CCR  2403 (b) and (c).

26      Petitioner has served a term in excess of the maximum term required by the

27  Matrix for the base term of second degree murder convictions. CCR  2403 (c).

28

1    The law require some evidence to be on the record to support the decision.

2  See Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 454-457,

3  105 S. Ct. 2768, 2773-2775 (1985); In re Rosenkrantz, supra, 29 Cal. 4th 616,

4  656-657, 128 Cal. Rptr.2d 104, 139-140.

5    At the present time the record is void of the some evidence required to hold

6  petitioner in custody in excess of the time required by the Matrix for the base

7  term for second degree murder convictions.

8    Due to the fact that petitioner has been punished in excess of the time

9  authorized by the statutory law, he possess protection from the due process

10  clause on its own force. Sandin v. Conner, supra, 515 U.S. 472, 115 S. Ct. 2293,

11  2295; Wolff v. McDonnell, supra, 418 U.S. 539, 555-556, 94 S. Ct. 2963, 2974-2975.

12

13    For the foregoing reasons petitioner submit to this court that he possess

14  protected liberty interest in Parole Suitability Decisions and he further has

15  protection on its own force from the  Due Process Clause to the United States

16  Constitution because he has served a period of time in excess of the time requi-

17  red by the State Law for the crime petitioner committed.

18

19

20    Because petitioner possess protected liberty interest in parole decisions under

21  the California and United States Constitutions his claims are reviewable under

22  both constitutions.

23

24

25

26

27

28

1                          GROUND TWO

2

3    UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES

4    CONSTITUTIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE ON

     PAROLE UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE WAS CONVICTED

5    AND THIS COURT SHALL REVIEW PETITIONER'S PETITION UNDER THE LAW THAT WAS

6    IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.

7

8    The California Court of Appeals 6th Appellate District in violation of the

9    rectroactive doctrine and contrary to the clearly establihsed law by the United

10   States Supreme Court adjudicated petitioner's petition under the Dannenberg Law.

11      "When the defendant waives his state court remedies and admits his guilt,

12      he does so under the law then aexisting." McMann v. Richardson, 397 U.S. 759,

        774, 25 L.Ed.2d 763, 775, 90 S. Ct. 1441 (1970).

13

14      "When "issues of both retroactively and application of constitutional doctrine

15      are raised" the retroactively issue should be decided first." Teague v. Lane

        (1989) 489 U.S. 288, 300, 109 S. Ct. 1061, 1070.

16

17      The California Court of Appeals, 6th Dist. in In re DeLuna, 24 Cal. Rptr.3d 643,

18   649 (2005) used the decision of the California Supreme Court in In re Dannenberg

19   (2005) 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417, 104 P.3d 783 to find that there is

20   some evidence that petitioner committed the murder in an especially cruel and

21   callous manner.

22      In petitioner's case the California Court of Appeals cited the following holdings

23   from the Dannenberg case: The Court stated:

24      "In In re Dannenberg (2005) 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417, 104 P.3d 783,

25      the California Supreme Court has recently determined that the Board is not

26      required to refer to its sentencing matrices or to compare other  crimes of the

27      same type in deciding whether a prisoner is suitable for a parole and whether the

28      prisoner's  crime was "especially" cruel" or exceptionally callous."   Rather,

                                         8

1    the Board may characterize a murder as " 'particularly egregious' " if there is

2    violence or viciousness beyond what is "minimally necessary" for conviction.

3    (Id. at p. 440, 23 Cal. Rptr.3d 417, 104 P.3d 783.)"  In re DeLuna, supra,

4    24 Cal. Rptr.3d 643, 649.

5       The above holding changed the law that was in effect at the time petitioner

6    committed the offense.

7       At the time petitioner committed the offense the Board was required to refer to

8    its sentencing matrices to find the inmate suitable for a parole release date. In

9    re Stanworth, 33 Cal.3d 176, 181-186, 187 Cal. Rptr. 783, 786-788 (Cal. 1982);

10   In re Seabock, 140 Cal. App.3d 29, 40, 189 Cal. Rptr. 310, 317, Fn. 9 (1983); In

11   re Ramirez, 114 Cal. Rptr.2d 381, 397 (Cal. App. 1 Dist. 2001).

12      The decisions of the California Court of Appeals is the authority in the absence

13   of a California Supreme Court decision on the issue. Kolander v. Lawson, 461 U.S.

14   352, 103 S. Ct. 1855, fn. 6 (1983).  Therefore, previous to the time the California

15   Supreme Court construed Penal Code Section 3041 in Dannenberg, the decisions of

16   the California Court of Appelas could be the authority in parole decisions.

17      Under Stanworth it is required the Board to consider all the factors to find

18   the prisoner suitable for a parole release date and to set the base term according

19   to the time prescribed in the matrices and that only when the inmate was convicted

20   of first degree murder and for a specific category of extremely serious offense

21   the Board could set the base term beyond the term authorized by the matrices. See

22   also In re Rosenkrantz, 29 Cal. 4th 616, 653-655, 682-684, 128 Cal. Rptr.2d 104,

23   137-139, 161-162 (Cal. 2002).

24

25      At the time petitioner committed the offense Penal Code Subsection 3041 (a)

26   required and it is still requiring that the Board to compare other crimes of the

27   same type in deciding whether a prisoner is suitable for release on parole. See

28   also In re Seabock, supra, 140 Cal. App.3d 29, 189 Cal. Rptr. 310, fn. 7.

1    The comparing of other crimes of the same type in deciding whether a prisoner

2    is suitable for release on parole was eliminated by the California Supreme Court.

3    See In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 443, and fn. 18.

4

5     At the time petitioner committed the offense Penal Code Subsection 3041 (a)

6    required and it is still requiring that one year previous to the inmate's minimum

7    Eligible Parole Release Date the Board shall meet with the inmate and shall

8    normally set his parole release date.

9     Even when this law didn't violate any constitution the California Supreme Court

10    in In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 433-434 overruled the above men-

11    tioned law and it held that the Board can denied to every prisoner our release date

12    without considering Penal Code Subsection 3041 (a).

13

14     At the time petitioner committed the offense the Board could denied prisoners our

15    release date only if the prisoner had committed the offense in an "especially

16    heinous, atrocious " or "cruel" manner. See Title 15 of CCR Sec. 2402 (c) (1) and

17    in In re Seabock, supra, 140 Cal. App.3d at 39, 189 Cal. Rptr. 310, 316, fn. 8.

18     In Dannenberg, the requirement that the Board must find the crime was committed

19    in an especially heinous, atrocious or cruel manner was reduced by the California

20    Supreme Court and it held that the Board may caracterize a murder as " 'particularly

21    egregoius' " if there is violence or vicousness beyond what is "minimumally necessa-

22    ry" for a conviction. In re Dannenberg, supra, 23 Cal. Rptr. 3d 417, 440, 443;

23    In re DeLuna, supra, 24 Cal. Rptr.3d 643, 649.

24     No matter the circumstances of the commitment offense the Board in every case

25    finds evidence beyond the minimum necessary to establish the elements for second

26    degree murder and the Board is using that evidence to denied us (prisoners) our

27    release on parole for the rest of our natural life as the California Supreme Court

28    in Dannenberg directed the Board to do.

10

1    Therefore, in In re Dannenberg, 34 Cal. 4th 1061 the California Supreme Court

2    changed the Indeterminate Sentence Law (ISL) in that the Board needs not longer

3    consider all the factors it used to consider to find the inmate suitable for a

4    parole release date it only needs to consider the commitment offense factor;

5    the Boards needs not consider Penal Code Subsection 3041 (a) and it only needs to

6    find minimum evidence in the commitment offense beyond the evidence necessary to

7    establish the elements for second degree murder to deny to every prisoner our

8    release from custody based on the static commitment offense circumstance only and

9    for the rest of our natural lives.

10   The California Supreme Court's holdings in In re Dannenberg is clearly an effort

11   of the Court to increase the punishment of second degree murder convictions to the

12   punishment of First Degree Murder convictions and the Court expressed its desire

13   to increase the punishment by directing the Board to increase the crimes of second

14   degree murder to the crimes of first degree murder. See In re Dannenberg, supra,

15   23 Cal. Rptr.3d 417, fn. 16.

16

17   The way the California Supreme Court construed Penal Code 3041 cannot be applied

18   to petitioner and the prisoners similarly situated without violating the retroactive

19   doctrine.

20   In violation of the Retroactive Doctrine and contrary to the clearly established

21   law by the United States Supreme Court in Bouie v. City of Columbia, 378 U.S. 347,

22   84 S.Ct. 1697 (1964); and Rogers v. Tennessee, 532 U.S. 451, 121 S. CT. 1693 (2001)

23   the California Court of Appeals, 6th District denied petitioner the relief he

24   sought based on the unreasonable holding on Dannenberg.

25

26

27

28

11

1    In Bason v. Kentuckey, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986) the

2    Court modified a portion of Swaim v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.

3    Ed.2d 759 (1965) and the portion that was modified could not be applied retroac-

4    tively on collateral review of convictions that became final before, Batson was

5    announced. See Teague v. Lane, supra, 489 U.S. 288, 294-295, 109 S.Ct. 1061, 1065-

6    1067.

7    In Teague v. Lane, supra, 489 U.S. at 305-307, 109 S. Ct. at 1073 the Court

8    made it clear that habeas corpus petitions shall be adjudicated by applying the

9    law that was in effect at the time the prisoner was convicted.

10

11    For the foregoing reasons petitioner's petition shall be adjudicated by applying

12    the law that was in effect at the time he committed the offense rather than be

13    adjudicated unde the Dannenberg holdings and petitioner request his petition be

14    adjudicated by applying the law that was in effect when he committed the offense

15    and was convicted.

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              GROUND THREE

2

3    THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER
     UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE
4
     TO THE CALIFORNIA AND UNITED SATES CONSTITUTIONS FOURTEENTH AMENDMENT.
5

6       In Title 15 of California Code of Regulations (CCR) Section 2402 are the

7    circumstances the board shall consider to find prisoners unsuitable or suitable

8    for a parole release date.

9       In Title 15 of CCR 2402 (c) are the circumstances tending to show unsuitability.

10   CCR 2042 (c)(1) Commitment Offense. "The prisoner committed the offense in an

11   especially heinous, atrocious or cruel manner."

12      The BPT has found that petitioner is not suitable for parole and would pose an

13   unreasonable risk of danger to society or a threat to public safety. The panel

14   stated: "Of course, we have the instant offense that was carried out in a violent

15   and brutal manner." That there were multiple victims. That one was killed. That

16   the offense was carried out in a manner which demonstrates a disregard for human

17   life and for public safety."  See Exhibit "G" on page 76.

18      In support of its findings the Board has referred to the following statement

19   of facts:

20   "And the conclusions were drawn from the statement of facts wherein the inmate on
     July 7th, 1985, after being involved in a verval and then physical altercation
21
     with the victim, one Fernando Renteria, this is at a local bar, restaurant, the
22
     inmate who had been drinking all day drove the vehicle that he was in, a truck,
23   to his residence, changed into his own vehicle which contained two weapons, a
     shotgun and a .22 caliber rifle, and drove back to the bar after having a couple
24
     of drinks at home. He said he was going back to the bar and redtaurant to drink.
25   He confronted Mr. Renteria, and as a result, he shot and killed the victim. He
26   shot the victim once in the back as he was trying to flee after shooting him two
     other times, once in the face, and upon leaving the scene did fire a weapon at a
27
     vehicle containing a noninvolved party, a female with childrin in the vehicle.
28

                                    13

1    The inmate claims he was drunk during the offense and does not remember parts

2    of it; however, intoxication was a big part of this crime, and the inmate states

3    that he committed this crime because of the altercation that occurred at the

      restaurant bar prior to him driving the truck to his residence." See Exhibit "G"

4    on pages 76-77.

5    The evidence does not support the findings of the Board that petitioner will

6    pose an unreasonable risk of danger to society or a threat to public safety if

7    released from custody.

8    The Psuchological Evaluation Report of 1998 state that petitioner's Level of

9    dangerousness was likely equal to that of the average inmate. See Exhibit "C" on

10   page 2.

11   In 2001 a Psychological Evaluation Report was conducted. The Clinical Psycholo-

12   gist concluded that petitioner would pose a low level of risk for future violence

13   in the community. See Exhibit "C" on page 7.

14   In 1996 an Officer who prepared a Life Prisoner Evaluation Report concluded that

15   petitioner posed a low degree of threat to the public if released to the community.

16   See Exhibit "D" on page 1.

17   An Officer who prepared a Life Prisoner Evaluation Report in 1998 believed that

18   petitioner posed a moderate degree of threat to the public. See Exhibit "D" on p.8.

19   In another Life Prisoner Evaluation Report prepared by a prison Officer in the

20   year 2000 the Officer concluded that petitioner would pose a moderatye degree of

21   threat to society if released from custody. See Exhibit "D" on page 12.

22   Since the year 2001 no Evaluation Reports have been prepared by an expert. And

23   because petitioner has followed all the regulations, there is not reason to

24   believe that a better report would not be prepared after an additional five years

25   of good conduct.

26   Therefore, no evidence support that petitioner will pose an unreasonable risk

27   of danger to society if released from prison. See CCR Section 2402 (a).

28

14

1    Under CCR 2402 (c)(1) the Board found that petitioner committed the offense in

2    a violent and brutal manner. See Exhibit "G" on page 76.

3    Second degree murder is the unlawful killing of a human being with Malice

4    Aforethought." Penal Code Section 187 Subd. (a); People v. Bland, 121 Cal. Rptr.2d

5    546, 552 (Cal. 2002).

6    Penal Code Section 188 describe Malice Aforethought.

7    It would be unreasonable no to believe that every second degree murder is not

8    committed with violence.

9    Therefore, the fact that the Board found that the offense was committed with

10   violence add nothing to petitioner's second degree murder conviction.

11   Atrocious is defined as savage brutal; outrageously cruel or wicked. People v.

12   Superior Court of Santa Clara County, 31 Cal.3d 797, 802, 183 Cal. Rptr. 800, 802

13   (Cal. 1982); People v. Aguilar, 58 Cal. App. 4th 1196, 1201, 68 Cal. Rptr.2d 619,

14   621 (Cal. App. 1 Dist. 1997).

15   Therefore, "Brutal" means "Atrocious".

16   All killings are atrocious. Proffitt v. Florida, 428 U.S. 242, 255, 96 S. Ct.

17   2960, 2968 (1976).

18   On October 3, 1994 was petitioner's Initial Parole Suitability Hearing held. See

19   Exhibit "D" on page 3.

20   Since the Initial Parole Suitability hearing was held the Board has denied

21   petitioner his release from custody based on the circumstance that petitioner

22   committed the offense in an atrocious manner. This is a static circumstance that

23   connot be changed.

24   By considering the same static circumstance for the last 12-years to denied

25   petitioner's release from custody violates the Due Process Clause to the California

26   and United States Constitutions. See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir.

27   2003); In re Rosenkrantz, 29 Cal. 4th 616, 683-684, 128 Cal. Rptr.2d 104, 161-162

28   (Cal. 2002).

15

1   Although Biggs v. Terhune, supra, 334 F.3d 910 is a United States Court of

2   Appeals's decision the decision of the Court of Appeals is the authority in the

3   absence of the United States Supreme Court decision on the issue. Kolander v.

4   Lawson, 461 U.S. 352, 103 S. CT. 1855, fn. 6 (1983).

5      Therefore, the circumstance that petitioner committed the offense in a atrocious

6   manner is not longer and cannot be at this time some evidence to deny petitioner's

7   release from custody.  It would be anomalous to use a static circumstance to

8   increase petitioner's crime to a greater crime after petitioner has done the time

9   for the degree of the crime he was convicted.

10     Under CCR Sec. 2402 (c)(1)(A) the Board has found that there were multiple

11  victims. That upon leaving the scene petitioner did fire a weapon at a vehicle

12  containing a noninvolved party, a female with children in the vehicle. See

13  Exhibit "G" on pages 76-77.

14     Since petitioner was arrested he accepted responsibility for everything he did.

15  See Exhibit "B" on page 10; Exhibit "C" on page 6.

16     Petitioner has maintained that he shot to the other car because he thought it

17  belonged to the party of the victim. See Exhibit "G" on pages 57-58.

18     Petitioner was never charged for shooting other persons. See Exhibit "B" on p. 4.

19     To give a harsher sentence because of an uncharged offense for which there is

20  no conviction, however, violates due process. (United States v, Grayson (1978)

21  438 U.S. 41, 54-55, 98 S. Ct. 2610, 2617-2618, 57 L. Ed.2d 582.) People v. Montano

22  6 Cal. App. 4th 121, 8 Cal. Rptr.2d 136 (Cal. App. 5 Dist. 1992).

23     "Criminal charges not resulting in conviction (charges which resulted in acquit-

24  tal or dismissal for any reason) shall not affect the parole date unless the

25  factual circumstances surrounding the charge are reliably documented and are an

26  integral part of the crime for which the prisoner is currently committed to prison."

27  In re Rosenkrantz, 80 Cal. App. 4th 409, 425, 95 Cal. Rptr.2d 279, 291 (Cal. App.

28  2 Dist. 2000).

16

1    In petitioner's case the shot he shot to other persons is not an integral part

2    of the commitment offense. And after being considering it for the last 12 years to

3    denied petitioner's release  from custody violates the Due Process Clause. Biggs v.

4    Terhune, 334 F.3d 910, 917; In re Rosenkrantz, supra, 29 Cal. 4th 616, 683–684,

5    128 Cal. Rptr.2d 104, 161–162.

6    Therefore, the fact that petitioner had shot to a vehicle by mistake is not

7    longer some evidence to deny him his release from custody.

8

9    The Board found that the offense was carried out in a manner which demonstrates

10    a disregard for human life and public safety. See Exhibit "G" on page 76.

11    This finding of the Board is what is required for an Implied Malice Aforethought.

12    People v. Roberts (1992) 2 Cal. 4th 271, 317, 6 Cal. Rptr.2d 276, 826 P.2d 274;

13    People v. Whatson, 30 Cal.3d 290, 3000, 179 Cal. Rptr. 43 (1981); People v. Sanchez,

14    103 Cal. Rptr.2d 809, 812 (Cal. App. 3 Dist. 2001).

15    Therefore, what the Board is finding is that petitioner committed the murder with

16    Implied Malice Aforethought. It adds nothing beyond what is required to establish

17    the elements for a second degree murder offense.

18

19    CCR 2402 (c)(2) PRIOR RECORD OF VIOLENCE.  Petitioner has not any prior record

20    of violence. See Exhibit "D" on page 7; Exhibit "G" on pages 20, 77.

21    Petitioner has not any prior criminal record at all. In re DeLuna, 24 Cal. Rptr.3d

22    643, 650.

23    For the foregoing reasons no evidence support the findings of the Board that

24    petitioner is not suitable for release on parole and would pose unreasonable risk

25    to the public if release from prison.

26

27

28

1    PETITIONER MEET THE CRITERIA TO BE RELEASED FROM CUSTODY

2    Under Title 15 of CCR Section 2402 (d) are the circumstances tending to show

3    suitability.

4    CCR 2402 (d)(1) No Juvenile Record.  Petitioner has not any Juvenile Criminal

5    Record. See Exhibit "D" on page 11.

6    (2) Stable Social History.  Petitioner has not an unstable social history. See

7    In re DeLUna, supra, 24 Cal. Rptr.3d 643, 650-651.

8    (3) Signs of Remorse.  Since petitioner was arrested he has expressed remorse for

9    the killing of the victim and for wherever wrong he did. See Exhibit "C" on pages

10   1, 6-7.

11   (4) Motivation For The Crime.  The motive for the crime was a verval and physical

12   confrontation and alcohol was involved. See Exhibit "C" on pages 6-7.

13   (6) Lack of Criminal History. Petitioner has not any criminal history. See In re

14   DeLuna, supra, 24 Cal. Rptr.3d at 650.

15   (7) Age. "The prisoner present age reduces the probability of recidivism."

16   Petitioner was born on September 15, 1954. See Exhibit "B" on pages 6, 9.

17   Therefore, at the age of 52-years there is not probable that petitioner would

18   commit another crime upon his release from custody. Petitioner has learned his

19   lesson.

20   (8)  Understanding and Plans for Future. "The prisoner had made realidtic plans for

21   release or has developed marketable skills that can be put to use upon release."

22   Petitioner has both. Petitioner has realistic plans for release. See Exhibit "G"

23   on page 80, Exhobit "C" on page 5.

24   While petitioner has been imprisoned he has developed marketable skills by

25   completing Landscaping Vocational. See Exhibit "E".

26   (9) Institutional Behavior. "Institutional activities indicate an enhanced ability

27   to function within the law upon release."

28

1    Petitioner has been a hard worker his whole life including during the time he

2    has spent in prison: he tried hard to improve his education but he failed to do it

3    due to his inability to learn; petitioner learned Landscaping vocational; and he

4    has been disciplinary free during the 21 years he has been imprisoned; and he has

5    been involved into self-help programs including Alcoholics Anonymous (AA) for the

6    last ten years. See Exhibit "C" page 5; Exhibit "D" on pages 3-4, 7, 10, 14-15;

7    Exhibit "E" and Exhibit "F"; and Exhibit "G" pages 35-36.

8

9    For the foregoing reasons petitioner meet the criteria to be released from

10    prison.

11                    PETITIONER'S ALCOHOL PROBLEM

12

13    Based on the Psychological Evaluation Reports one prepared by Dr. Trude Zmoelnig

14    on July 21, 1998 and another prepared by Dr. Erich Reuschenberg on August 2001

15    the Board found that petitioner on the first interviews had claimed he was a

16    social drinker and that now he admitted he is an alcoholic. See a copy of the

17    Psychological Reports at Exhibit "C" on pages 1, 5.

18    See also the findings of the Board at Exhibit "G" on pages 80-81.

19    Petitioner has stated that he used to drink 2 or 3 beers each day after he had

20    returned home from his job and that on the weekends he used to drink a 6 pack of

21    beers and that on the night he committed the offense he was drunk. See Exhibit "C"

22    on pages 1, 5.

23    On July 20, 1996 petitioner enrolled into the group of AA and that since then

24    he has been a member of AA. See Exhibit "D" on page 7.

25    Petitioner thought an alcoholic person was a person who drinks every day the

26    whole day and not work. Like a homeless person.

27

28

                            19

1    In AA petitioner has learned three indications to know if a person is an alcoholic.

2    These three indications are: (1) when a person go in a black-out; (2) when a person

3    want to stop drink, but he can't (for exemple when the person said he was going to

4    drink only one or two shot and he can't stop until he get drunk); (3) when a person

5    drinks some alcohol every day.

6    Because petitioner used to drink some alcohol every day, he falls into indication

7    number 3.

8    Through years involved into AA petitioner has learned the indications to know if

9    he is an alcoholic and he has concluded he is an alcoholic.

10

11    Is the fact that petitioner has learned in AA he is an alcoholic and has admitted

12    to it some evidence to deny his release from custody? Obviously no.

13    Therefore, petitioner submit to this court that the fact that he has learned in

14    AA he is an alcoholic and he has admitted to it is not some evidence to deny him

15    his release from custody.

16

17    For the foregoing reasons petitioner submit to this court that there is not

18    evidence to deny his release from custody.

19

20

21    Under Bogovich v. Davis, 282 F.3d 780, 784 (9th Cir. 2002) the Board cannot rely

22    on petitioner's alcohol problem to deny him his release on parole in doing so the

23    Board would be violating the ADA.

24

25

26

27

28

1                          GROUND FOUR

2

3    THE EXECUTIVE BRANCH OF GOVERNMENT HAS BREACHED THE PLEA AGREEMENT PETITIONER
     ENTERED WITH THE PROSECUTOR AND HAS INCREASED PETITIONER'S PUNISHMENT OF SECOND
4    DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER. 5TH, 6TH, AND 14TH Amend.

5

6    The United States Supreme Court has recognized different degrees of Criminal

7    Culpability. Mullaney v. Wilbur, 421 U.S. 684, 697-698, 95 S. Ct. 1881, 1889 (1975);

8    Solem v. Helm, 77 L.Ed.2d 637, 651 (1983); Apprendi v. New Yersey, 120 S. Ct. 2348,

9    2360 (2000);Harmelin v. Michigan, 501 U.S. 957, 996, 111 S. Ct. 2680, 2702 (1991).

10   Apparently the principle of different degrees of criminal culpability is a

11   universally established principle that has been recognized since 1215 when the Magna

12   Carta was written. See Solem v. Helm, supra, 77 L.Ed. at 645, fn. 9.

13   The State of California also recognize the principle of "different degrees of

14   criminal culpability". The Legislature has enacted numerous statutes with different

15   degrees of criminal culpability.

16   Relevent in this issue is Penal Code Section 189 for first degree murder. Sentence

17   are 25-years to life, life without the possibility of parole and death penalty.

18   Penal Code Section 187 for second degree murder. Sentence 15-years to life. See

19   Penal Code Section 190; People v. Robetson, 17 Cal. Rptr.3d 604, 610 (Cal. 2004);

20   Second Degree Murder and manslaughter are lesser included offenses of first degree

21   murder. People v. Stears, 92 Cal. Rptr. 69, 14 Cal. App.3d 178 (Cal. App. 2 Dist.

22   1971).

23   Lesser included offenses, mean lesser in terms of magnitude of punishment.

24   Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989);

25   Carter v. U.S. 530 U.S. 255, 147 L.Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

26   On August 29, 1985 petitioner pleaded guilty to second degree murder and

27   he was sentenced to 15-years to life plus two year for the use of deadly weapon.

28   See Exhibit "G" on page 1-2.

1    Petitioner pleaded guilty with the expectation he will be deprived of his liberty

2  only to the extent established by the statutory law and the Board's regulations.

3  I.B.S. v. St. Cyr. 533 U.S. 289, at 316, 321-323, 121 S.Ct. 2271, 2288, 2291-2292,

4  (2001); Bowen v. Hood, 202 F.3d 1211, at 1220-1222 (9th Cir. 2000); Magaña-Pizano

5  v. I.N.S., 200 F.3d 603, 613 (9th Cir. 1999). However, the BPT has held petitioner

6  incarcerated beyond the term established by the statutes and regulations in viola-

7  tion of the Due Process Clause to California and United States Constitutions.

8  Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227, 2229 (1980).

9    When petitioner pleaded guilty to second degree murder nobody told him that by

10  pleading guilty to second degree murder eventually his punishment will be increased

11  to a punishment imposed on a first degree murder conviction. Petitioner relied on the

12  written law at the time he pleaded guilty to second degree murder to plead guilty.

13  The written law at the time he committed the offense and pleaded guilty was that

14  second degree murder convictions were lesser included offenses of first degree murder.

15  People v. Wickershaw, 32 Cal.3d 307, 326, 185 Cal. Rptr. 436, 446, 650 P.2d 311,

16  (Cal. 1982); People v. Stearns, 92 Cal. Rptr. 69, 14 Cal.App.3d 178 (Cal. App. 2 Dist.

17  1971); and that  when the defendant pleads guilty of a crime divided into degrees

18  he will not be punished for a higher degree of the crime. Penal Code Sec. 1192.1;

19  and the Matrix for the base term of second degree murder was: Minimum Term 10-years

20  and Maximum Term was 21-years. See CCR Section 2403 (c).  Therefore, petitioner has

21  not reason to believe the State of California will breach the agreement and increase

22  his punishment to that of a first degree murder conviction. CCR 2403 (b).

23    In the Matrix for the base term the credits petitioner has earned during two

24  decades  under CCR 2410 are not included.  Without providing petitioner with the

25  credits he is entitle he has served the Maximum Term for second degree murder (21-

26  years) according to the matrix for the base term. CCR 2403 (c).

27  Now, petitioner is serving a punishment of the greater offense of first degree

28  murder conviction. CCR 2403 (b).

22

1    The government of California has breached the plea agreement petitioner entered

2    with the prosecutor because petitioner already served the maximum term for second

3    degree murder and now the government is punishing him with the punishment of the

4    greater offense of first degree murder.

5    "Plea agreements are contractual in nature and are measured by contractual law

6    standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003); United States v.

7    Anderson, 970 F.2d 602, 606 (9th Cir. 1992); People v. Shepard, 169 Cal. App.3d

8    580, 586, 215 Cal. Rptr. 401, 405 (1985); People v. Collins, 45 Cal. App. 4th 849,

9    869, 53 Cal. Rptr.2d 367, 378 (1996).

10    The Government is held "to the literal terms of the agreement." United States v. Baker,

11    25 F.3d 1452, 1458 (9th Cir. 1994); U.S. v. Schuman, 127 F.3d 815, 818 (9th Cir. 1997).

12    "Well established is the rule that the people will be held strictly to the terms of plea bargain made

13    with a criminally accused." People v. Nelson, 239 Cal. Rptr. 287, 289, 194 Cal. App.3d 77, 79 (Cal.

14    App. 1 Dist. 1987); In re Troglin, 51 Cal. App.3d 434, 438, 124 Cal. Rptr. 234, 237 (1975).

15    "When either the prosecution or the defendant is deprived of benefits for which

16    it has bargained, corresponding relief will lie from concessions made." People v.

17    Collins, 21 Cal.3d 208, 214, 145 Cal. Rptr. 686, 689 (Cal. 1978); People v. Collins,

18    supra, 45 Cal. App. 4th 849, 863, 53 Cal. Rptr.2d 367, 374.

19    The BPT is a party to the prosecutor's plea agreement. Therefore, the Board is

20    bound by the promise of the District Attorney. United States v. Anderson, supra,

21    970 F.2d 602, 605, fn. 5.

22    Also it is established that the State cannot with one hand give a benefit and

23    with the other take it away. Bowen v. Hood, supra, 202 F.3d at 1223; People v.

24    Harvey, 25 Cal.3d 754, 758, 159 Cal. Rptr. 696, 698-699 (Cal. 1979).

25    The Constitution does not take with one hand what it gives with the other.

26    Gideon v. Wainwright, 372 U.S. 339, 83 S. Ct. 792 (1963); Texas v. Cobb, 121 S.

27    Ct. 1335, 1347 (2001).

28

23

1    The Government of California with one hand (the prosecution) convict defendants

2    of second degree murder and with the other hand ( The Board of Prison Terms) it

3    increases the punishment of second degree murder convictions to the punishment

4    imposed on first degree murder convictions.

5      "When a plea rest in any significant degree on a promise or agreement of the

6    prosecutor, so that it can be said to be part of the inducement or consideration,

7    such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.

8    Ct. 495, 499, 30 L.Ed.2d 427 (1971); United States v. Anderson, supra, 970 F.2d

9    602, 607; People v. Kaanehe, 19 Cal.3d 1, 13, 136 Cal. Rptr. 409, 417 (1977);

10    In re Jermine B., 69 Cal. App.4th 634, 639, 81 Cal. Rptr.2d 734, 737 (1999).

11        PETITIONER CARRIED OUT HIS PART OF THE PLEA BARGAIN.

12      "It is clear from Santobello ... that due respect for integrity of plea

13    bargains demands that once a defendant has carried out his part of the bargain the

14    government must fulfill its part." Brown v. Poole, supra, 337 F.3d 1155, 1159.

15      According to the Matrix petitioner already served the Maximum Term for the crime

16    he committed second degree murder; While in prison petitioner has developed marketa-

17    ble skills to put on use upon his release from custody; petitioner also has realis-

18    tic plans upon his release on parole and petitioner has not prior criminal record

19    and neither he has engaged in serious misconduct after he was convicted on the

20    current offense. Therefore, petitioner has carried out his part of the plea

21    agreement and the Government of California shall be ordered to comply with its part

22    and release petitioner from custody.

23      The United States Supreme Court requires the courts to draw lines between the

24    sentences when the crimes are divided into degrees. Solem v. Helm, supra,

25    77 L.Ed.2d at 652-653.

26      The California Courts didn't draw lines between the sentences  of the crimes

27    which are divided into degrees, but the Legislature commanded the BPT to draw those

28    lines. Penal Code Section 3041 (a).

24

1    The BPT drew lines between the sentences when the crime is divided into degrees.

2    The lines are the matrices to set the base term. Relevant to this issue are two

3    of them. See Title 15 of CCR 2403 (b) and (c).  The Matrices are codified guidelines.

4    In re Standworth, 33 Cal.3d 176, 181-184, 187 Cal. Rptr. 783, 786-788 (1982). Because

5    the matrices are codified guidelines they cannot be hollow guidelines they mean some-

6    thing.  Because petitioner has been in custody since July 7, 1985 he has served the

7    Maximum Term established by the  matrices for the base term (21-years).

8    The Board has not pointed to any evidence to hold petitioner incarcerated beyond

9    the time established in the matrix for the base term of second degree murder.

10    Petitioner is entitle to credits under CCR 2410. By providing petitioner with the

11    credits he is entitle he has served about 28-years in custody. This is a term equi-

12    valent to a term of first degree murder convictions. See CCR 2403 (b).

13    Under the clearly established law by the United States Supreme Court the punish-

14    ment of second degree murder cannot be increased to the punishment of first degree

15    murder crime because it violates the 5th, 6th, and 14th Amendments. It violates

16    petitioner's right to notice of the information of every essential elements for first

17    degree murder offense. Russell v. United States, 369 U.S. 749, 765, 8 L. Ed.2d 240,

18    251 (1962); Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219,

19    1223, 140 L.Ed.2d 350 (1998); It violates petitioner's right to be informed about the

20    nature of the charge against him. Henderson v. Morgan, 426 U.S. 637, 645, 49 L.Ed.2d

21    108, 114 (1976); It violates petitioner's right to be find guilty-in a jury trial-of

22    first degree murder beyond a reasonable doubt. Apprendi v. New Yersey, 120 S. Ct.

23    2348, 2356-2357 (2000) and by increasing petitioner's punishment of second degree

24    murder to a punishment of first degree murder the government of California has brea-

25    ched the plea agreement petitioner entered with the prosecutor. Santobello v. New

26    York, supra, 404 U.S. at 262, 92 S. Ct. 445, 30 L.Ed.2d 427.

27    For the forgoing reasons petitioner requests his immediate release from custody.

28    Because he has served the time required to be served for a second degree murder.

1                                GROUND FIVE

2

3    DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED WITH FIRST DEGREE MURDER
4    UNDER PENAL CODE  189, BUT HE WAS CHARGED WITH SECOND DEGREE MURDER UNDER
     PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY WITHIN THE
5    EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE PETITIONER'S
6    PUNISHMENT OF SECOND DEGREE MURDER CONVICTION TO A PUNISHMENT OF FIRST
7    DEGREE MURDER CONVICTION.

8                                   "A"

9    Petitioner was charges with second degree murder under Penal Code Section 187.

10   None of the essential elements of first degree murder were on the information.

11      The division of a crime into degrees constitutes an exclusive Legislative function.

12   People v. Bright, 12 Cal.4th 652, 669-670, 49 Cal. Rptr.2d 732, 743 (Cal. 1996).

13      In California second degree murder is a lesser included offense of fist degree

14   murder. People v. Bradford, 15 Cal.4th 1229, 1344, 65 Cal. Rptr.2d 145, 212;

15   People v. Stearns, supra, 92 Cal. Rptr. 69, 14 Cal. App.3d 178.

16      Lesser included offenses mean lesser in terms of magnitude of punishment. Schmuck

17   v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L.Ed.2d 734 (1989); Carter v.

18   U.S. , 530 U.S. 255, 147 L.Ed.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

19      The defendant cannot be punished for a   higher degree of the crime than the

20   degree specified. People v. Mikhail, 13 Cal. App. 4th 846, 856, 16 Cal. Rptr.2d 641,

21   647, (Cal. App. 4 Dist. 1993); Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. at

22   2229; Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, fn. 4 (1980).

23      It is the function of the Legislature Branch to define crimes and prescribe

24   punishments. In re Lynch, 8 Cal.3d 410, 414, 105 Cal. Rptr. 217, 219 (1973);

25   Manduley v. Superior Court, 27 Cal.4th 537, 552, 117 Cal. Rptr.2d 168, 180 (2004);

26   Harmelin v. Michigan, 501 U.S. 957, 962, 964, 111 S. Ct. 2680, 2684-2686 (1991);

27   Rummel v. Estelle, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139, 63 L.Ed.2d 382

28   (1980).

                                     26

1    Therefore, under this approach neither the California Courts nor anybody within

2    the executive branch of government have jurisdiction to increase the punishment of

3    second degree murder to the greater punishment of first degree murder.  Because the

4    increasing of punishment is legislative in nature, the executive branch of govern-

5    ment lack jurisdiction to increase petitioner's punishment to that of a greater

6    offense's punishment.

7                                    "B"

8    THE GOVERNMENT OF CALIFORNIA FURTHER HAS NOT JURISDICTION TO INCREASE PETITIONER'S

9    PUNISHMENT BECAUSE HE WAS NOT CHARGED WITH THE CRIME OF FIRST DEGREE MURDER AND
     NONE OF THE ELEMENTS OF FIRST DEGREE MURDER WERE ON THE INFORMATION.

10    See Exhibit "B" on page 4.

11    The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d 417,

12    fn. 16 held that the Board can increase the crimes of second degree murder to the

13    crimes of first degree murder if the prisoner committed the offense by deliberation

14    and premeditation. However, this holding violates Due Process of Law under the

15    California and United States Constitutions 5th, 6th, and 14th Amendments;  It

16    violates the statutory law Penal Code Section 1192.1 which hold that when a

17    defendant pleads guilty of a crime divided into degrees he will not be punished for

18    a higher degree of the crime and it it violates the regulatory law which requires

19    the inmate to serve a Minimum Term of ten years and a Maximum Term of 21-years for

20    a second degree murder conviction; and it is contrary to the clearly established

21    law by the United States Supreme Court which held that "No person shall be

22    required to answer for any of the higher crimes and the Court cannot permit a

23    defendant to be tried on charges that are not made in the indictment or information

24    against him." Stirone v. United States, 361 U.S. 212, 217, 4 L. Ed.2d 252, 256,

25    fn. 3 (1960).

26

27

28

1    "The indictment or information shall be a plain, concise and definitive

2    written statement of the essential facts constituting the offense charged."

3    "The indictment or information shall state for each count the official or

     customary citation of the statute, rule, regulation or other provision of the

4    law which the defendant is alleged therein to have violated." Russell v. United

5    States, 369 U.S. 749, 762-763, 8 L.Ed.2d 240, 250, 82 S. CT. 1038 (1962); United

     States v. Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L.Ed.2d 515 (1980).

6

7    "An indictment must set forth each element of the crime it charges. Almendarez-

     Torres v. United States, 523 U.S. 224, 228, 118 S. CT. 1219, 1223, 140 L.Ed.2d

8    350 (1998); Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907,

9    41 L.Ed.2d 590 (1974); Russell v. United States, supra, 369 U.S. at 765,

10   8 L.Ed. 2d at 251.

11   "It is a settled rule that a bill of particulars cannot save an invalid

12   indictment and the trial court cannot amend a indictment or information.

      Russell v. United States, supra, 369 U.S. at 770-771, 8 L.Ed.2d 254-255.

13

14   Therefore, neither the bill of particulars nor the trial court's instructions to

15   the petit jury can be sufficient to charge petitioner with first degree murder or

16   to inform him regarding the essential elements of first degree murder charge. United

17   States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976); U.S. v. Hooker, 841 F.2d 1225,

18   1227, 1232 (4th Cir. 1988).

19   When the essential elements are missing on the information the trial court lacks

20   jurisdiction to tried the defendant on that charge. U.S. v. Hooker, 841 F.2d at 1232.

21   It is well established that a plea of guilty cannot be voluntary in the sense that

22   it constitutes an intelligent admission that the accused committed the offense unless

23   the accused has received "real notice of the true nature of the charge against him,

24   the first and most universally recognized requirement of due process." Smith v.

25   O'Grady, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L.Ed. 859 (1941); Henderson v.

26   Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257, 49 L.Ed.2d 108, 114 (1976);

27   Marshall v. Lonberger, 459 U.S. 422, 436, 103 S. Ct. 843, 852 (1983).

28

1    Because petitioner was not informed about the nature of the charge against him

2    (First Degree Murder) Henderson v. Morgan, supra, 426 U.S. 637, 96 S. Ct. 2253,

3    49 L. Ed.2d 108, 114, fn. 13 the State of California is without jurisdiction to

4    increase his punishment of second degree murder to a punishment of first degree

5    murder.

6    The increase of petitioner's punishment also violates Apprendi v. New Yersey,

7    120 S. Ct. 2348, 2355 (2000); Blakely v. Washington, 124 S. Ct. 2531 (2004) that

8    under the Due Process Clause of the Fifth Amendment and the Notice and jury trial

9    guarantees of the Sixth Amendment any fact that increases the Maximum penalty for

10   a crime must be charged in an indictment, submitted to the jury, and proven beyond

11   a reasonable doubt." "The Fourteenth Amendment commands the same answer in this

12   case involving a State Statute."

13

14   Because petitioner has been punished in excess of the time prescribed by the

15   statutory law in violation of the Due Process Clause to the California and Unitd

16   States Constitutions, he requests his immediate release from custody.

17

18

19

20

21

22

23

24

25

26

27

28

29

1                              GROUND SIX

2

3    WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT
4    MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY ESTABLISHED
     LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF THE  DUE PROCESS
5    CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

6

7    When the California Supreme Court construed Penal Code Section 3041 it misapplied

8    its own law and "when the state misapplied its own law it creates a protected

9    liberty interest reviewable in Habeas Corpus Petition." Hicks v. Oklahoma,

10   447 U.S. 343, 346; Ballard v. Estelle, 937 F.2d 453, 456 (9th Cir. 1991).

11   In re Dannenberg, 34 Cal.4th 1061 the California Supreme Court construed Penal

12   Code Section 3041 in a way to evade consideration of constitutional issues by the

13   federal courts of Parole Suitability Decisions. See Sass v. Cal. Bd. of Prison Terms,

14   376 F. Supp.2d 975 (E.D. Cal. 2005).

15   "Federal courts may not second-guess the State Court's construction of its own
16   state law unless "it appears that its interpretation is an obvious subterfuge to
     evade consideration of federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691,
17   95 S. Ct. 1881, fn. 11, 44 L.Ed.2d 508 (1975); Rogers v. Tennessee, 532 U.S. 451,
18   457, 121 S. Ct. 1693, 149 L.Ed.2d 697 (2001); Hubbard v. Knapp, 379 F.3d 773, 780.
19   (9th Cir. 2004).

20   The United States Supreme Court has held that "When a prison regulation or practi-
21   ce offends a fundamental constitutional guarantee, federal courts will discharge
     their duty to protect constitutional rights." (Johnson v. Avery, 393 U.S. 483, 486,
22   89 S. Ct. 747, 749, 21 L.Ed.2d 718 (1969); Procunier v. Martinez, 416 U.S. 396,
23   405-406, 94 S. Ct. 1800, 1807-1808 (1974).
24   IN Dannenberg the Court stated that in 2001 the Legislature amended Penal Code

25   Section 3041 favorable to the prisoners who are serving life terms. That the 2001

26   amendment to Subsection 3041 (b) appears to assume the Board's present mode of

27   procedure. That the Legislature has not disturbed the Board's interpretation of

28   Section 3041. See In re Dannenberg, supra, 23 Cal. Rptr.2d at 430-438.

                                  30

1    Because the California Supreme Court assumed the Legislature wanted the Board's

2    present mode of procedure the Court construed Penal Code Section 3041 contrary to

3    the intent of the Legislature, contrary to the principles of statutory construction

4    and contrary to the clearly established law by the United States Supreme Court.

5    The California Supreme Court held that the BPT can deny to every prisoner who

6    are serving life terms their release on parole for the rest of their natural lives

7    based on the commitment offense factor only if the Board believe the prisoners are

8    risk to the public safety. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 431-432,

9    439-440, 442-443.

10    Previous to the decision in Dannenberg the Board was denying parole release dates

11    to over than 99 percent of the inmates who were eligible for release on parole and

12    to those who  the Board found suitable for a parole release date the Governor cance-

13    led their release date. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 448.

14    If previous to the Court's decision in Dannenberg, the Board and the Governor were

15    capriciously and arbitrarily denying almost to every inmate their release on parole

16    noe when they don't have to consider the factors and the guidelines, but the commit-

17    ment offense factor only to find the inmates suitable for a parole release date they

18    are going to be denying release on parole in a more capricious and arbitrary manner.

19    This holding of the California Supreme Court is contrary to the clearly establi-

20    shed law by the United States Supreme Court in that it has held:

21    "We have repeatedly hold that the Government's regulatory interest in  community

22    safety can in appropriate circumstances, outweight an individual's liberty inte-

       rest when the indiviual has been arrested for a specific category of extremely

23    serious offenses." That "There is nothing inherently unttainable about a predic-

24    tion of future criminal conduct." U.S. v. Salerno, 481 U.S. 739, 748-751,

25    109 S. Ct. 2095, 2102-2104 (1987) and cases cited therein.

26    It is also contrary to the clearly established law by the United States Supreme

27    Court which has held that the laws shall be enacted in a way to prevent arbitrary

28    application by those who apply them. Grayned v. City of Rockford, 408 U.S. 104,

1    108–109; Kolander v. Lawson, 461 U.S. 352, 357–358, 103 S. Ct. 1855, 1858; Smith

2    v. Goguen, 415 U.S. 566, 574, 94 S. Ct. 1242, 1247–1248, 39 L.Ed.2d 605 (1974).

3

4        It is a well established principle of statutory construction that a court in

5    construing a statute it should give significance to every word, phrase, sentence

6    and part of an act to ascertain the intent of the Legislature so as to effectuate

7    the purpose of the law. People v. Black, 32 Cal.3d 1, 5–6, 184 Cal. Rptr. 454,

8    455–456; People v. Craft, supra, 41 Cal.3d 554, 559–560, 224 Cal. Rptr. 626, 629.

9        The California Supreme Court in excess of its jurisdiction failed to give signi-

10    ficance to the words and phrases of Penal Code Subsection 3041 (a) as it is required

11    by the State's Law when a statute is construed.

12        The words and phrases in Penal Code Subsection 3041 (a) cannot be regarded as mere

13    suplusage; They mean something. Carter v. U.S., 530 U.S. 255, 262, 120 S. Ct. 2159,

14    2165 (2000).

15        The federal Constitution protect the prisoner when the State misapplied its own

16    law. The clearly established law by the United States Supreme Court hold:

17    "State statutes or regulations can create a right triggering due process protection

18    tp ensure that the state created right is not arbitrarily abrogated." "The touch-

19    stone of the due proces is protection of individuals against arbitrariry action of

20    government." (Dent v. West Virginia, 129 U.S. 114, 132, 9 S. Ct. 231, 233, 32 L. Ed.

21    623, (1889)). 'Wolff v. McDonnell, 418 U.S. 539, 557–558, 94 S. Ct. 2963, 2975–2976

22    (1974); Meachum v. Fano, 427 U.S. 215, 225–226, 96 S. Ct. 2532, 2539 (1976).

23        The California Supreme Court failed to give significance to the command of the

24    Legislature  in Penal Code Subsection 3041 (a) which require that "One year prior

25    to the prisoner's minimum term the Board shall meet with the prisoner and shall

26    normally set a parole release date as provided in Penal Code Section 3041.5. See

27    In re Ramirez, 114 Cal. Rptr.2d 381, 397 (1 Dist. 2001).

28

1   Penal Code Section 3041 (a) also command the Board to establish criteria for the

2   setting of Parole Release Dates and in doing so shall consider the number of victims

3   of the crime for which the prisoner was sentenced and other factors in mitigation

4   and aggravation of the crime. In re Seabock, 140 Cal. App.3d 29, 37-38, 189 Cal.

5   Rptr. 310, 315 (1983).

6   The Board established criteria for the setting of parole release dates. See

7   Title 15 of CCR Section 2400-2411.

8   The Board established matrices to set the base term. Title 15 of CCR Sec. 2403.

9   The Matrices to set the base term are codified guidelines. In re Standworth,

10   33 Cal. 3d 176, 182, 187 Cal. Rptr. 783, 787 (Cal. 1982); In re Seabock, supra,

11   140 Cal. App.3d at 40, 189 Cal. Rptr. at 317, fn. 9.

12   However, the California Supreme Court directed the Board to disregard the Matrices

13   to set the base term. In re Dannenberg, 23 Cal. Rptr.3d at 433 and fn. 15.

14   This holding of the California Supreme Court to eliminate from consideration the

15   matrices to set the base term is contrary to the United States Supreme Court

16   requirement that when the crime is divided into degrees the Court shall draw lines

17   between the sentences. Solem v. Helm, 77 L.Ed.2d at 652-653.

18   In Penal Code Section 3041 (a) the State Legislature commanded the Board to draw

19   the lines between the sentences (the matrices) as it is required by the United States

20   Supreme Court in Solem v. Helm. However, the California Supreme Court in excess of

21   its jurisdiction, contrary to the intent of the Legislature and contrary to the

22   clearly established law by the United States Supreme Court overruled the matrices.

23

24

25

26

27

28

1    Penal Code Section 3041 (a) and CCR 2401 require the Board to set the parole

2    release date in a manner that provides uniform term for offenses of similar gravi-

3    ty and magnitude with respect to the threat to the public. CCR 2402 and 2403 also

4    require the Board to consider the criteria to find the inmate suitable for a parole

5    release date and to set the base term. The regulations are commanded by Penal Code

6    Sec. 3041 (a). By  directing the Board to deny prisoners their release date based

7    on the commitment offense factor only the court indirectly is directing the Board

8    to disregard the criteria to find the inmate suitable for a parole release date.

9    This holding of the California Supreme Court is contrary to the command of the

10   Legislature in Penal Code Sec. 3041 (a) that the Board shall establish criteria to

11   find the inmate suitable for a parole release date and to set the base term.

12   The words and phrases in Penal Code Sec. 3041 (a); and the rules in Title 15 of

13   CCR 2400 to 2411 cannot be regarded as mere surplusage; They mean something. Carter

14   v. U.S., supra, 530 U.S. 255, 262, 120 S.Ct. 2159, 2165.

15   By disregarding the circumstances to find prisoners suitable for a parole release

16   date the Board is disregarding our good conduct in prison, the efforts we

17   have made to obtain our high school equivalent certificate, to complete vocationals

18   and self-help programs and the credits we have earned during two decades of parti-

19   cipation in the programs.  Everything has been but empty formulas of words.

20   This holding of the Court is contrary to the clearly established law which hold:

21   "The prevalent modern phylosophy of penology is that the punishment shall fit
     the offender and not merely the crime." (Williams v. New York, 337 U.S. 241,
22
     247-248, 69 S.Ct. 1079, 1083-1084, 93 L.Ed. 1337 (1949)." United States v. Grayson,
23   438 U.S. 41, 45, 98 S.Ct. 2110, 2113 (1978); In re Minnis, 7 Cal.3d 639, 644,

24   102 Cal. Rptr. 749, 752 (1972); In re Rodriguez, 14 Cal.3d 639, 650, 122 Cal. Rptr.
     252, 560 (Cal. 1975).
25

26

27

28

1    "The decision of parole turns on a "discretionary assesment of a multiplicity

2    of imponderables, entitling primarily what a man is and what he may become

3    rather than simply what he has done." Greenholtz v. Inmates of Nebraska Penal

     & Corr., 442 U.S. 1, 10, 99 S. Ct. 2100, 2105 (1979); Board of Pardons v. Allen,

4    482 U.S. 369, 107 S. Ct. 2415, fn. (1987).

5

6    The Court further contrary to the law of statutory construction and in an

7    unreasonable manner considered the Legislative history of the ISL as well as the

8    circumstances of the enactment of the statute to determine the intent of the

9    Legislature. People v. Craft, supra, 41 Cal.3d at 560, 224 Cal. Rptr. at 629.

10    From 1975 to 1978 the Legislature made several amendments to the ISL. See In re

11   Williams, 53 Cal. App.3d 10, 15, 125 Cal. Rptr. 457, 460 (1975); In re Dannenberg,

12   23 Cal. Rptr.3d at 427, 435-437.

13    The Amendments to the ISL were made because the Board in an arbitrary manner was

14   imposing excessive punishments to the prisoners. See In re Minnis, 7 Cal.3d 639,

15   102 Cal. Rptr. 749 (1972); In re Rodriguez, 14 Cal.3d 639, 122 Cal. Rptr. 552 (1975);

16   In re Lynch, 8 Cal.3d 410, 105 Cal. Rptr. 217 (1972); In re Sturm, 11 Cal.3d 258,

17   113 Cal. Rptr. 361 (1974); In re Williams, 53 Cal. App.3d 10, 125 Cal. Rptr. 457,

18   (1976).  In In re Dannenberg, supra, 23 Cal. Rptr.3d 435-436, 441-442 the California

19   Supreme Court concedes that previous to the amendments to the ISL the Board was

20   arbitrarily and capriciously imposing excessive punishments.

21    In order to prevent the Board from arbitrarily and capriciously denied prisoners

22   their release dates the Legislature commanded the Board to set criteria in order

23   to find the inmate suitable for a parole release date and guidelines to set the

24   base term. Penal Code Sec. 3041 (a).

25

26

27

28

1      Now the California Supreme Court no only failed to consider the history of the

2      ISL in a way to prevent the Board from arbitrarily applied  the law (from capri-

3      ciously and arbitrarily denied us (prisoners) our release date on parole) but

4      it construed the ISL in a way that it is encouraging the Board to denied us our

5      release on parole in a more capriciously and arbitrarily manner than previous to

6      the amendments to the ISL.

7

8      For the foregoing reasons the construction of Penal Code Sec. 3041 in In re

9      Dannenberg 34 Cal. 4th 1061 shall be declared unconstitutional because the

10     construction of Penal Code Sec. 3041 is contrary to the statutory construction,

11     it is contrary to the Legislature's intent, it violates petitioner's Due Process

12     rights and it is contrary to the clearly established law by the United States

13     Supreme Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                    GROUND SEVEN

2

3      THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY

4      THAT IT TURNED THE ISL INTO A VAGUE LAW IN VIOLATION OF THE DUE PROCESS

5      CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

6      The State's vague law is reviewable by the federal courts.

7      "Where the statute or regulation is challenged as vague because individuals

8      to whom it plainly applies simply cannot understand what is required of them
       and do not wish to forswear all activity arguably within the scope of the

9      vague terms abstention is not required." Procunier v. Martinez, 416 U.S. 396,

10     94 S. Ct. 1800, fn. 5 (1974).

11                                       "A"

12     In Dannenberg the Court held that those inmates who believe their confinements

13     have become constitutionally excessive to take their claims to court and the court

14     will review them on proportionality grounds. Dennenberg, 23 Cal. Rptr.3d at 441-443.

15     However, the Court didn't state how much time is proportionate for a second

16     degree murder sentence (15-years to life sentence).

17     In Dannenber the Court repeatedly stated that inmates sentenced for a second degree

18     murder convictions are sentenced to serve life maximum terms. See In re Dannenberg,

19     supra, 23 Cal. Rptr.3d at 420-421, 429-432, 434, 436, 439.

20     Then how the 15-years to life sentences can be disproportionate  when on the

21     Court's judgment every second degree murder sentence is a natural life maximum

22     sentence?

23     The principle of gross disproportionality only exist on death penalty sentences.

24     Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 2701-2702 (1991). But if

25     it exist it is applied only in the "exceedingly rare" and "extreme"  case. Lockyer

26     v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 1173 (2003); Harmelin v. Michigan,

27     supra, 501 U.S. 957, 963, 111 S. CT. 2680, 2685.

28

1    Therefore, under the principle of disproportionality the sentence of an inmate

2    who was sentenced to 15-years to life for second degree murder conviction will

3    be an exceedingly rare and extremely rare finding of disproportionality.

4    This holding of the California Supreme Court is contrary to the clearly establi-

5    shed law by the United States Supreme Court which has held:

6    "The Government's regulatory interest in community safety can, in appropriate

7    circumstances, outweigh an individual's liberty interest when the individual

     has been arrested for a specific category of extremely serious offenses."

8    U.S. v. Salerno, supra, 481 U.S. 738, 748-750, 107 S. Ct. 2095, 2102-2104, and

9    cases cited therein.

10    The United States Supreme Court has held that: "It would certainly be dangerous

11    if the Legislature could set a net large enough to catch all possible offenders,

      and leave it to the courts to steo inside and say who could be rightfully detained

12    and who should be set at large, this would, to some extent, substitute the

13    judicial for the Legislative department of government." Kolander v. Lawson,

      supra, 461 U.S. 352, 103 S. Ct. 1855, fn. 7; Smith v. Goguen, 415 U. S. 566,

14    94 S. Ct. 1242, fn. 9 (1974).

15    The California Supreme Court did exactly that. The Court held that the BPT can

16    denied parole to every inmate on the commitment offense factor only and if the

17    inmate believe he has been retained beyond the constitution allows then to take

18    his claim to court and the court will review it on disproportionality grounds.

19    In re Dannenberg, supra, 23 Cal. Rptr. 3d at 441-443. *

20    "A Statute which either forbids or requires the doing of an act in terms so

21    vague that men of common intelligence must necessarily guess at its meaning and

      differs as to its application, violates the first essential of the Due Process

22    of Law." Smith v. Goguen, supra, 415 U.S. 566, 94 S. Ct. 1242, 39 L.Ed.2d 605,

23    fn. 8.

24    *  The Court didn't say how those fellow inmates-who have the disability to learn
         high enough  to present their claims to court- can take their claims to court.

25      Therefore,  Penal Code Section 3041 was also construed in a discriminatory
         manner and in violation of the ADA because only the wealthy and the educated

26      can take their parole decision claims to court.

27

28

1    The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d at 421,

2    443 held that the Board can denied to prisoners our release on parole for the rest

3    of our natural life only by pointing to some evidence that the particular circums-

4    tances of the crime—circumstances beyond the minimum elements of the conviction-

5    indicate exceptional callousness and cruelty with trivial provocation, and that

6    those suggested the inmate remains a danger to public safety.

7    The Court didn't say what are the circumstances beyond the minimum elements of

8    the prisoner's conviction the Board can consider to denied a prisoner his release

9    on parole for the rest of his natural life.

10    The Courts have recognized that all second degree murder by their nature involve

11    a disregard for the life of another. In re Rosenkrantz, 80 Cal. App. 4th 409,

12    95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist. 2000); "All second degree murders

13    by definition involve some callousness—i.e., lack of emotion or symphathy, emotio-

14    nal insensitivity, indifference to the feelings and suffering of others." In re

15    Scott, 119 Cal. App. 4th 871, 891, 15 Cal. Rptr.3d 32, 45 (2004); A Florida Court

16    also recognize that all killings are atrocious." Proffitt v. Florida, 428 U.S. 242,

17    255, 96 S. Ct. 2960, 2968 (1976); "An ordinary person could honesly believe that

18    every unjustified, intentional taking of human life is "especially heinously,

19    outrageously or wantonly vile, horrible, inhuman." Godfrey v. Georgia, 442 U.S.

20    420, 428-429, 100 S. Ct. 1759, 1764-1765; Maynard v. Cartwright, 486 U.S. 356,

21    364, 108 S. Ct. 1853, 1859 (1988).

22    For the Members of the Board no matter how or why the murder occurred they always

23    find that the prisoner committed the crime in an especially cruel. or callous

24    manner, and that the crime was carried out in a way that "demonstrates an excep-

25    tionally callous disregard for human suffering" and that the motive for the crime

26    "was inexplicable or very trivial in relation to the offense." That the prisoner

27    needs therapy in order to face, discuss, understand and cope with stress in a

28    non-destructive manner. That until progrss is made, the prisoner continues to be

1    unpredictable and a threat to others. See In re Dannenberg, supra, 23 Cal. Rptr.3d

2    at 423-424; In re Ramirez, 114 Cal. Rptr.2d 381, 388; In re Rosenkrantz, 80 Cal.

3    App. 4th 409, 418, 95 Cal. Rptr.2d 279, 286, fn. 10, and fn. 14; In re Scott, 119

4    Cal. App. 4th 871, 883, 889, 15 Cal. Rptr.3d at 39, 44.

5        Therefore, no matter what are the circumstances of the crime the evidence shows

6    that the Board always had found and it will find in every murder crime-circumstan-

7    ces beyond the minimum elements of the crime- and that the prisoner committed the

8    crime with exceptionalyy callousness and cruelty with trivial provocation.

9        Therfore, without guidelines to find the inmate suitable for a parole release

10   date and to set the base term the ISL is vague and the construction of Penal Code

11   Sec. 3041 in In re Dannenberg, 34 Cal. 4th 1061 shall be declared void and uncons-

12   titutional by this Court because it violates petitioner's Due Process Rights to the

13   California and United States Constitutions. 5th, 6th, and 14th Amendments.

14

15       Due to the fact that petitioner was not charged with first degree murder under

16   Penal Code Sec. 189, neither the Court nor anybody within the executive branch of

17   Government have jurisdiction to increase petitioner's conviction of second degree

18   murder to a conviction of first degree murder in that the elements of first degree

19   murder were not on the information. Stirone v. United States, 361 U.S. 212, 217,

20   4 L.Ed.2d 252, 256, fn. 3 (1960); Hendrson v. Morgan, 426 U.S. 637, 645; Almendarz-

21   Torres v. United States, 523 U.S. 224,228, 118 S. CT. 1219, 1223, 140 L. Ed.2d

22   (1998); U.S. v. Hooker, 841 F.2d 1225, 1231-1232 (4th Cir. 1988).

23       Therefore, because petitioner was not charged with first degree murder the elements

24   of a first degree murder cannot be considered to denied his release on parole.

25       The consideration of the elements of first degree murder to denied petitioner his

26   release on parole also violates Apprendi v. New Yersey, 120 S. Ct. 2348, 2355 (2000);

27   and Blakely v. Washington, 124 S.Ct. 2531 (2004) that "Under the due process Clause

28   of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amend-

1    ment, any fact that increases the Maximum penalty for a crime must be charged in an

2    indictment, submitted to the jury, and proven beyond a reasonable doubt."

3    Then, if the elements of a first degree murder charge cannot be considered by

4    the Board to deny petitioner his release on parole, then what are the circumstances

5    to deny his release on parole for the rest of his natural life or to increase his

6    punishment of second degree murder conviction to a punishment of first degree murder

7    conviction?

8    Is not the construction of Penal Code Section 3041 a vague law?

9    The United States Supreme Court requires lines between the sentences when the

10    crimes are divided into degrees. Solem v. Helm, 77 L.Ed.2d at 652–653.

11    The United States Supreme Court further has held:

12    "If arbitrary and discriminatory enforcement is to be prevented laws must provide

13    explicit dtandards for those who apply them." Greyned v. City of Rockford, 408
       U.S. 104, 108–109; Kolander v. Lawson, supra, 461 U.S. 352, 357–358, 103 S.Ct. 1858.

14    "Although, the doctrine focuses both on actual notice to the citizens and

15    arbitrary enforcement, we have recognized recently that the more important
       aspect of the vagueness doctrine "is not actual notice, but the other principle

16    element of the doctrine—the requirement that a legislature establish minimal

17    guidelines to govern law enforcement." (Smith v. Goguen, 415 U.S. 566, 574,
       94 S. Ct. 1242, 1247–1248, 39 L.Ed.2d 605 (1974).

18
       "When the Legislature fails to provide such minimal guidelines, a criminal

19    statute may permit "a standardless sweep that allows policemen, prosecutors,

20    and juries to persue their personal predictions." Id., at 575, 94 S. Ct., at
       1248.) Kolander v. Lawson, 461 U.S. at 358, 103 S. Ct. at 1858.

21
       "One of the premises of the void for vagueness doctrine is that an excessively

22    vague statute promotes arbitrary and discriminatory law enforcement by delegating

23    (too much) power to the law-enforcement officers." Grayned v. City of Rockford

24    408 U.S. 104, 108–109; Kolander v. Lawson, supra, 461 U.S. 352, 357, 103 S. Ct.
       1855, 1858; Bear v. City of Wauwatosa, 716 F.2d 1117, 1124 (7th Cir. 1983);

25    United Beverage Co. v. Ind. Alcoholic Beverage, 760 F.2d 155, 158 (7th Cir. 1985).

26

27

28

1    The California Legislature commanded the BPT to establish criteria and guidelines

2    to find the inmates suitable for parole release dates and to set the base ter.

3    See Penal Code Subsection 3041 (a); and Title 15 of CCR Sec. 2401, 2402, and 2403.

4    Therefore, the Legislature established or commanded to be established the guide-

5    lines required by the United States Supreme Court to avoid vagueness and to prevent

6    the government from capriciously and arbitrarily apply the law.

7    However, the California Supreme Court overruled most of Penal Code subsection

8    3041 (a) (It only left intact the requirement that one year previous to the inmate

9    minimum term the Board consider the inmates for a parole release dates) the rest

10    was overruled. The Court overruled the Matrices to set the base term. See In re

11    Dannenberg, supra, 23 Cal. Rptr.3d 417, 433, and fn. 15.  And by holding that the

12    Board can denied to every prisoner our release on parole based on the commitment

13    offense factor only the Court impliedly is directing the Board to disregard the

14    criteria to find the prisoners suitable for a parole release date).  The Court

15    further is directing the Board to increase second degree murder crimes to first

16    degree murder crimes. See In re Dannenberg, 23 Cal. Rptr.3d 417, fn. 16.

17    Previous to the decision in Dannenberg the Board was denying parole to over than

18    99 percent of the inmates who were suitable for a parole release date and to those

19    who the Board found suitable for a parole release date the Governor has cancelled

20    their release dates. See In re Dannenberg, 23 Cal. Rptr.3d at 448.

21    Therefore, if previous to the decision on Dannenberg,—when the Board had to

22    consider the guidelines to find the inmate suitable for a parole release date—

23    the Board and the Governor were capriciously and arbitrarily denying prisoners

24    our release on parole now when they don't have to consider the guidelines they are

25    denying  release on parole in a more capricious and arbitrary manner.

26

27

28

1    The law of vagueness require guidelines and standards to prevent the government

2    from arbitrarily applied the law, however, the California Supreme Court not only

3    failed to provide guidelines to avoid arbitrariness on parole decisions, but it

4    eliminated the minimum guidelines that were in effect which guidelines were

5    commanded by the Legislature.

6

7    Therefore, the California Supreme Court turned the ISL into a vague law more

8    vague than it was previous to its decision in In re Dannenberg, supra, 34 Cal. 4th

9    1061 and it construed Penal Code Section 3041 in a discriminatory manner in

10    violation of the ADA and Due Process Clause to the California and United States

11    Constitutions.

12

13    For the foregoing reasons this Court shall declare the Decision in In re

14    Dannenberg, 34 Cal. 4th 1061, unconstitutional on vagueness grounds and in

15    violation of the ADA and in Violation of the Due Process Clause to the California

16    and United States Constitutions. 5th, 6th, and 14th Amendments.

17

18

19

20    I, Isidro DeLuna,    swear under penalty of perjury that the foregoing is

21    true and correct. Signed at Soledad, California on December 20, 2005.

22

23

24                                                 *Isidro de Luna*

25                                                 Isidro Deluna

26

27

28

43

## PROOF OF SERVICE BY MAIL

### (C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
　　　　　　　　　　　　 ) SS.
COUNTY OF MONTEREY )


I, __Isidro DeLuna_____, am a resident of the State of California, County of Monterey. I am over the age of 18 years and I    am/am not    a party to the within action. My    business/residence    address is P.O. Box 689, Soledad, California, 93960-0689.


On __December 20, 2005_____, 20 05_____, I served the foregoing:

__HABEAS CORPUS PETITION_____

_____

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

SUPREME COURT OF CALIFORNIA
350 McAllister St.
San Francisco, Ca. 94102-4797

DEPARTMENT OF JUSTICE
Office of Attorney General
455 Golden Gate Ave., No. 11000
San Francisco, ca. 94102-3664

　　　　There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

　　　　I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

　　　　Executed this __20th___ day of __December , 2005_____, 20 05_____, at Soledad, California.


/S/ *Isidro de Luna*