IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ISIDRO F. DELUNA, | ) | |
| Petitioner, | ) | No. C 07-2491 CRB (PR) |
| vs. | ) | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| BEN CURRY, Warden, | ) | |
| Respondent. | ) | |

Petitioner, a state prisoner recently transferred to Avenal State Prison in Avenal, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") April 27, 2005 decision to deny him parole.

Per order filed on August 29, 2007, the court found that petitioner's claim that the BPT's decision finding him not suitable for parole does not comport with due process appears colorable under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**BACKGROUND**

On August 29, 1985, petitioner pleaded guilty to second-degree murder with use of a firearm in Santa Clara County superior court. He was sentenced to 17 years to life in state prison with the possibility of parole.

On April 27, 2005, petitioner appeared before the BPT for a subsequent parole consideration hearing. The BPT again found him unsuitable for parole and denied him a subsequent hearing for one year.

Petitioner unsuccessfully challenged the BPT's April 27, 2005 decision in the state supreme court. After the Supreme Court of California summarily denied his petition for a writ of habeas corpus on September 20, 2006, the instant federal petition for a writ of habeas corpus followed.

**DISCUSSION**

A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

1  presented in the State court proceeding." Id. at § 2254(d).  Under this standard,
2  federal habeas relief will not be granted "simply because [this] court concludes in
3  its independent judgment that the relevant state-court decision applied clearly
4  established federal law erroneously or incorrectly.  Rather, that application must
5  also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).
6       While circuit law may provide persuasive authority in determining
7  whether the state court made an unreasonable application of Supreme Court
8  precedent, the only definitive source of clearly established federal law under 28
9  U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme
10  Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331
11  F.3d 1062, 1069 (9th Cir. 2003).
12  B.    Legal Claims and Analysis
13       Petitioner seeks federal habeas corpus relief from the BPT's April 27, 2005
14  decision finding him not suitable for parole, and denying him a subsequent
15  hearing for one year, on the ground that the decision does not comport with due
16  process.  Petitioner claims that the BPT's decision is not supported by some
17  evidence in the record because it is based solely on the commitment offense.  He
18  also claims that the BPT must provide him with a fixed parole release date under
19  its sentencing matrices and that its continued refusal to do so has amounted to a
20  breach of his plea agreement.
21       California's parole scheme provides that the board "shall set a release date
22  unless it determines that the gravity of the current convicted offense or offenses,
23  or the timing and gravity of current or past convicted offense or offenses, is such
24  that consideration of the public safety requires a more lengthy period of
25  incarceration for this individual, and that a parole date, therefore, cannot be fixed
26  at this meeting." Cal. Penal Code § 3041(b).  In making this determination, the

3

board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole. Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same). This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." Hill, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board." Morales v.

4

1 California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on
2 other grounds, 514 U.S. 499 (1995).  In sum, if the parole board's determination
3 of parole unsuitability is to satisfy due process, there must be some evidence,
4 with some indicia of reliability, to support the decision.  Rosas v. Nielsen, 428
5 F.3d 1229, 1232 (9th Cir. 2005).

6       The record shows that the BPT panel afforded petitioner (through an
7 interpreter) and his counsel an opportunity to speak and present their case at the
8 hearing, gave them time to review petitioner's central file, allowed them to
9 present relevant documents and provided them with a reasoned decision in
10 denying parole.

11       The panel concluded that petitioner was "not suitable for parole and would
12 pose an unreasonable risk of danger to society or a threat to public safety" if
13 released from prison.  Apr. 27, 2005 Hr'g Tr. at 76 (Resp't Ex. 2).  It based its
14 decision on several grounds, including the circumstances surrounding the
15 commitment offense.  On or about July 7, 1985, petitioner had been drinking at a
16 local bar with some friends.  The victim, Fernando Rentorio, was also at the bar;
17 petitioner did not know him very well.  At one point, petitioner became involved
18 in a physical altercation with Rentorio, but soon after left the bar with his friends.
19 Petitioner later returned to the parking lot of the bar with a rifle.  He drove up to
20 Rentorio, who was standing in the parking lot, and circled him in his car.
21 Petitioner fired shots at Rentorio, one shot hitting Rentorio in the shoulder and
22 another in the face.  Rentorio nonetheless continued to walk around the lot,
23 spitting blood and teeth fragments.  Petitioner followed Rentorio in his car and
24 continued to fire shots, hitting a gas pump and then hitting the victim in the back.
25 As petitioner then tried to flee the area, he fired another shot in the direction of
26 the bar and hit a parked pick-up truck driven.  He also fired shots at an oncoming
27
28

car. The woman driving the car provided the police with a description of petitioner and a vehicle license number. When police went to petitioner's house to question him, he appeared impatient and tried to leave on several occasions. After a physical struggle, petitioner was apprehended and taken into custody. He later admitted committing the crime and pleaded guilty to second-degree murder with use of a firearm. Mar. 2005 Board Report at 1-2 (Resp't Ex. 3).

At the hearing, petitioner stated that he was intoxicated on the night of the crime and "didn't have the reaction or capacity" to call the police. Apr. 27, 2005 Hr'g Tr. at 19.

The panel explained that it found that the offense "was carried out in a violent and brutal manner," that "there were multiple victims" ("[o]ne was killed"), and that the offense "was carried out in a manner which demonstrates a disregard for human life and public safety." Id. at 76. Although petitioner had been drinking all day, he managed to drive a vehicle to his residence, change into another vehicle that contained two weapons (a shotgun and a rifle) and return to the bar to confront the victim. And once petitioner returned, he killed the victim by shooting him in the shoulder, face and back as the victim tried to flee. He even fired at a parked pick-up and at an oncoming car carrying a woman and children. Id. at 76-77. The panel found that petitioner had no prior criminal history and had been disciplinary-free in prison, except for a recent counseling memorandum for delaying count. Id. at 77-78. The panel found that petitioner's programming had been limited due to a medical condition and, consequently, he has not been able to participate in many self-help programs or obtain a marketable skill. Id. at 77. The panel found that alcohol played a major role in the commitment offense and that petitioner only recently admitted to having a serious problem with alcohol – it was at the April 2005 parole hearing that

1  petitioner first admitted that he was a drunk and an alcoholic. Id. at 78. The
2  panel noted that this recent awareness contrasted with the most recent
3  psychological report stating that petitioner has had a more serious problem with
4  alcohol than he is willing to acknowledge, and that this should be explored in a
5  new psychological evaluation. Id. at 79-80. The panel found that petitioner had
6  parole plans in Minnesota and Mexico, but not California. Id. at 80.

7      The panel commended petitioner for his positive behavior in prison –
8  having no serious disciplinary write-ups, being involved in some self-help
9  programs and ESL, and getting two vocational certificates; however, it concluded
10 that "these positive of his behavior do not outweigh the factors of unsuitability."
11 Id. The panel stressed that petitioner required "additional time in order to fully
12 understand and deal with the consequences of his act," and recommended that he
13 remain disciplinary-free, get involved in self-help programs to the extent his
14 medical condition permits him and cooperate with clinicians in completing a new
15 clinical evaluation, "specifically, to talk about insight [into his] alcohol abuse."
16 Id. at 81. The panel formally requested a new psychological evaluation and
17 denied parole for one year. Id.

18     The Supreme Court of California summarily denied petitioner's state
19 habeas petition generally alleging the same claims raised here. See In re Deluna,
20 No. S139852, slip op. at 1 (Cal. Sep. 20, 2006) (citing In re Dannenberg, 34 Cal.
21 4th 1061 (2005); In re Rosenkrantz, 29 Cal. 4th 616 (2002)) (Resp't Ex. 5).

22     The state court's rejection of petitioner's due process claims was not
23 contrary to, or involved an unreasonable application of, the Hill standard. See 28
24 U.S.C. § 2254(d). The BPT's April 27, 2005 decision to deny petitioner parole is
25 supported by some evidence in the record and that evidence bears some indicia of
26 reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole

based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense and need for further psychiatric treatment). The inquiry under Hill is simply "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Hill, 474 U.S. at 455-56 (emphasis added). There is – the facts surrounding the crime reasonably suggest that it was carried out in a cruel and callous fashion and petitioner's recent admission of a serious alcohol problem reasonably suggest that he has not adequately dealt with the addiction that played a major role in his killing another human being. Cf. Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). Although there were factors tending to support suitability, it is not up to this court to "reweigh the evidence." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994). The panel's legitimate concern with the facts surrounding the commitment offense and petitioner's recent admission of a serious alcohol problem constitutes some evidence under Hill in support of the board's determination that petitioner posed an unreasonable risk of danger to society if released from prison. See Hill, 474 U.S. at 455-56.

Petitioner argues that the BPT's reliance on the facts surrounding the commitment offense in determining that he is not suitable for parole conflicts with the Ninth Circuit's decision in Biggs. In Biggs, the Ninth Circuit upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, but cautioned that, over time, denying a prisoner parole strictly because of the nature of his offense and his prior conduct "would raise serious questions involving his liberty interest in parole . . .

and could result in a due process violation." <u>Biggs</u>, 334 F.3d at 916-17.  But in the instant case, the BPT did not base its decision solely on petitioner's commitment offense.  The BPT also found that petitioner's only recent admission of a serious alcohol problem weighed against his release on parole.  This finding alone constitutes some evidence under <u>Hill</u> in support of the board's determination that petitioner posed an unreasonable risk of danger to society if released from prison.  <u>See</u> <u>Hill</u>, 474 U.S. at 455-56.

Petitioner also claims that the BPT must provide him with a fixed parole date under California's sentencing matrices and that its continued refusal to do so has amounted to a breach of his plea agreement.  The claims are without merit.

The Supreme Court of California has held that the BPT need not evaluate an inmate's crime against the sentencing matrices because unless and until the inmate is found suitable for parole a date for the inmate's release need not be set. <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1070-01 (2005).  This court is bound by the Supreme Court of California's interpretation of California law.  <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal court sitting in habeas).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."  <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).  A plea agreement containing a specific promise, such as when the defendant will be paroled, is enforceable.  <u>See</u> <u>Brown v. Poole</u>, 337 F.3d 1155, 1161 (9th Cir. 2003) (that state prosecutor had no right to offer deal defendant accepted in exchange for waiving her constitutional rights may be a problem for state, but not defendant).  But it is petitioner who bears the burden of proving any alleged promise made by the prosecution.  <u>See</u> <u>Santobello</u>, 404 U.S.

at 261-62.  Petitioner makes no such showing.  Nor is there any indication in the record that petitioner was promised anything other than life unless he is found suitable for parole by the BPT.  The state courts' rejection of petitioner's breach of plea agreement claim cannot be said to be objectively unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 409.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:   May 27, 2008

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.07\Deluna, I1.denial.wpd